--------o--------

| 23 | 285 |
| 125 | 64 |
| 126 | 384 |
| 127 | 510 |
| 23 | 285 |
| 146 | 552 |

## WILCOXON *v.* ANNESLEY.

REPLEVIN—VERDICT.—In a replevin suit, it is not necessary that the verdict should find that the defendant actually took and detained the goods, where the taking into possession and detention are admitted in the answer. Page 287.

SAME—PRACTICE IN THE SUPREME COURT.—Where the finding in replevin did not ascertain the value of the goods, but the appellant, in whose favor it was, made no motion in the lower court to have it corrected; he will be regarded in the Supreme Court as having waived the error. Page 287.

Wilcoxon *v.* Annesley.

ASSIGNMENT LAW.—Our assignment law does not change the rule allowing a debtor, in failing circumstances, to make an actual *bona fide* sale of his property, and apply the proceeds in payment of his debts, or any portion of them. Page 290.

FRAUD.—In case of a sale of his property by such debtor, all the circumstances of the transaction must be looked at; and where full value is to be paid, and the consideration applied or secured to the payment of the debts. of the grantor, with no purpose to delay other creditors, there can be no fraud in the transaction; and the fact that a creditor, by purchasing the goods and assuming liabilities which he is pecuniarily able to meet, in securing his own debt, incidentally pays the debts of creditors preferred by the grantor above others, can not impeach the contract. Page 296.

SAME.—Where the purchase is of a stock of goods in a store having an established trade, it seems but reasonable that the grantor might be employed, for a time at least, to continue in charge of the business, and that circumstance will not in itself prove the transaction fraudulent. Page 295.

APPEAL from the *Floyd* Common Pleas.

RAY, CH. J.—In this case an execution was levied upon a stock of goods, and also upon a carriage, horse, and harness, as the property of one *Reineking*.

*Annesley* brought this action of replevin, claiming title to the property, against *Wilcoxon*, the sheriff of *Floyd* county.

The defendant answered in two paragraphs. In the first, he recited the several judgments and executions issued against *Reineking*, and the levy of the executions upon the property, and averred that he "took the same into his posession, and that at the time said writs came to defendant's hands, as aforesaid, and of said levy, the said goods and chattels were each and every of them the property of said *Reineking*, and were then, and still are, subject to the lien of said several executions."

The second paragraph, in addition to the averments contained in the first paragraph, alleges that *Reineking*, being in embarrassed and failing circumstances, and wholly unable to pay his debts as they matured, made a voluntary assignment of the property in the complaint mentioned to the plaintiff, in trust for said *Annesley*, and certain other creditors of said execution defendant; that said assign-

ment was not made in accordance with the provisions of the statute, and was therefore void, against said plaintiff in execution; and that said *Annesley* had no interest in said property. The plaintiff demurred to each paragraph of the answer. The court overruled the demurrers, and replies were filed in denial of the allegations of the answer. The cause was submitted to the court for trial. The finding was, "that the sale of the store goods was made in good faith, for a valuable consideration, and full value, and should be sustained, and that the plaintiff is entitled to a return of the same; that the sale of the horse, carriage, and harness was for a consideration, but was not accompanied with the possession, and was a fraud upon creditors, such as the execution plaintiffs are, and should not be sustained, and that the defendant is entitled to a return of the same."

The appellant insists that the finding is defective, in that it only determines the property in the goods, and does not find upon an issue of *non cepit*.

No such issue was tendered by the answer, but the levy upon, and taking into possession, was expressly admitted in both paragraphs; and the only question was, In whom was the property at the time of the levy? This was fully answered by the finding. Under the issue, the defendant claimed and secured the opening and closing of the case on its submission for trial.

The value of the property ordered to be returned to the sheriff was not ascertained by the finding of the court, and this is also assigned for error. The error, however, was upon a finding in favor of the appellant, and if he desired that finding to be perfected, he should have moved the court to that effect upon its rendition. It was still within the control of the court, and subject to correction. The appellant can not be heard in this court to assign error, except upon the overruling of such a motion. If no such motion is made, exceptions will only be considered to the findings in favor of the appellee, and all errors in the find-

ings for appellant treated as waived. He can not in this court insist upon errors in a finding in his favor, which he has not moved to correct below, to defeat findings, sufficient in themselves, in favor of the appellee. Upon such a finding judgment can be entered for the return of the property, and this will often afford full relief, and the appellant will be presumed to be content with such a judgment when he makes no motion to correct the finding.

This rule is not only reasonable, but is supported by authority. In the case of *Denny* v. *Greater*, 20 Ind. 20, a mortgage was given to secure the payment of two notes, only one of which was due, and the court did not find whether or not the property mortgaged was susceptible of division. A motion was made in this case for a new trial; but the failure to pass upon the question as to the divisibility of the property was not called to the attention of the court, nor a motion made to correct the finding. This omission was assigned here for error. In that case it is said: "If, when the court pronounces judgment, the defendant thinks the particular judgment pronounced is not warranted by the record, including the finding or verdict, though some other or different judgment might be, that is a proper time to make his objection. The thing is then by no means beyond the power or control of the court, and such corrections or modifications as might be right could be made. In our opinion, in accordance with the whole theory of our practice, if such objections are not made in the court below, they are unavailing here." If a defendant is held to have waived a defect in a verdict or finding against him, because he has failed to call the attention of the court below to the defect, although he has moved for a new trial, with still greater reason may the waiver be implied by a party who will not move to correct the omission in the finding favorable to himself.

The question upon which this case was decided in the court below was, whether the transaction between *Reineking* and *Annesley* amounted to a valid sale, or was fraudulent

as against creditors. Upon the decision of this question must rest also the judgment of this court. The point has been well argued by counsel, and has received our careful consideration.

The special findings of the court are in substance as follows: That the sale of the goods in the store was made in good faith, for a valuable consideration, and for full value; that, in consideration of the sale, said *Annesley* assumed and promised to pay certain specified debts of said *Reineking*, upon which said *Annesly* was not liable, and he gave his bills of exchange for the several creditors accordingly. "No agreement concerning the continuance of the goods in *New Albany* was shown by the proof; but the acts of the plaintiff, and his admission that such was his understanding, showed that such was his intention and expectation." *Annesly* also executed a power of attorney to said *Reineking* two days after he had purchased, and made him thereby his agent, and directed the property to be sold, and the proceeds applied to the payment of the debts he had assumed. *Reineking* remained in possession as the agent of said *Annesley*. The testimony tended to show that *Annesley* was the owner "of considerable, if not large, estate." There were special findings in regard to the carriage, horse, and harness, which will be considered hereafter.

There was evidence that, so far as it could be done by words, *Annesley* was placed in possession of the goods in the store-room. We do not decide that possession was so effectually transferred as to shift the burden from *Annesley* of showing the transaction to have been a *bona fide* purchase. The sale being then, in the language of our statute, (1 G. & H. 351, sec. 8,) "presumed to be fraudulent and void as against the creditors of the vendor," does the proof show "that the same was made in good faith, and without any attempt to defraud creditors?" The special findings of the court do not show that *Reineking* was in embarrassed circumstances, and unable to pay his

liabilities, and in fact supports the general finding. By an examination of the evidence, it appears that such was the fact; and that *Annesley*, who resided in *Albany, New York*, was the indorser for *Reineking*, his son-in-law, for a large amount; and that, learning of the embarrassment in which he was involved, *Annesley* came to *New Albany*, and attempted to purchase a sufficient amount of property from *Reineking* to secure him in his indorsements. He was unable to effect this, *Reineking* declaring that the property must all go together, and that by this course alone could its full value be secured to his creditors. Under these circumstances, the purchase was made for the full value of the goods, and an absolute liability incurred to pay for the same; the payment to be made to certain specified creditors of *Reineking*. The debts thus secured were: "1. Liens upon real estate conveyed to *Annesley* in the same transaction, and included in the sale. 2. Certain debts secured by the indorsement of friends, whom he felt bound to protect. 3. Some debts for borrowed money, owing principally to widows and orphans." *Reineking* seems to have acted with a view to secure himself in his indorsements. We must determine whether such a transaction comes within our law in regard to voluntary assignments. It has been held by this court, (*Lord and Others* v. *Fisher and Others*, 19 Ind. 9,) that a debtor, in embarrassed circumstances, may make any honest disposition of his property to secure any portion of his debts; that "our assignment law is not a bankrupt law." Our assignment law does not, then, change the rule allowing a debtor in failing circumstances to make an actual *bona fide* sale of his property, and apply the proceeds in payment of his debts, or any portion of them.

But it is insisted, that as this transaction resulted in securing not simply *Annesley* against liabilities already incurred, but as it also secured the payment of the claims of some other creditors, that therefore the trans-

action must be held to be an assignment in trust, and *Annesley* treated as a trustee; and as the trust was not created in the manner prescribed by law, that it is void. The Supreme Court of *Ohio* (*Bloom* v. *Noggle*, 4 Ohio, 45) held: "A creditor of an insolvent debtor, or one having assumed liabilities for him as surety, may lawfully take from him a mortgage to secure such debt, or save harmless from such liability; and, as the reward of his diligence, will be protected in the priority thus obtained. But it is equally well settled, that if he attempt to extend the lien beyond the necessity of his own indemnity, and secure the debt of another creditor, the mortgage is in substance and legal effect within the act." If that attempt to extend the lien was for the *purpose* of delaying some other creditor, this statement of the law would be clearly correct.

It is unnecessary, however, to question the authority of this decision, as the case under consideration is not within either the letter or the spirit of the rule stated. Here *Annesley* did not *attempt* to extend the lien beyond his liability, but endeavored to secure only himself; and only made the purchase of the entire stock because he could not otherwise accomplish his own indemnity. Nor was the security of other creditors with him an object in the purchase, but resulted as a mere incident under the directions of the vendor for the application of the purchase money. He became himself responsible for the debts, and assumed the payment of the same as part of the consideration for the purchase of the goods.

A case more nearly resembling the one now in judgment was that of *Driesbach* v. *Becker et al.*, 34 Penn. St. Rep. 152. "One *Bogar*, finding himself in embarrassed circumstances, entered into an arrangement with his *Philadelphia* creditors, that they should take forty per cent. in full of their respective claims; and that *Bogar* should convey all his property, real and personal, to *George Driesbach*, his brother-in-law, who should pay the

forty per cent. agreed upon. This agreement was after-ward reduced to writing, and signed by all the *Philadel-phia* creditors, except the plaintiff.

"*Bogar* and wife, to carry out the arrangement, executed a deed conveying to *Driesbach, for a nominal consideration,* all his property, real and personal, without exception or reserve.

"*Driesbach* sold the property, collected the debts, paid the signing creditors their forty per cent., and, at the time the attachment was laid, had in his hands a sufficient sum to pay the amount of plaintiff's judgment.

"An attachment execution was issued on a judgment in favor of *Beeker et al.* v. *Bogar*, which was served on *Driesbach* as *garnishee.*"

The court say: "We have here property, a trustee, a trust, and creditors of an insolvent who are to take under it."

It must be observed that the entire arrangement for the transfer of the property seems to have been made between the debtor and his preferred creditors, and that the stipulation for forty per cent., to be paid to the creditors, was a promise made by the debtor himself, to which *Driesbach* does not seem to have been a party. The intent of the transaction was not that *Driesbach* should make the purchase, because he desired to become the owner of the property from some prompting motive of self-interest; but he accepts the conveyance upon a nominal consideration, and upon the agreement made between the debtor and the creditors, and without any contract *made by him* to pay more than the property should produce. The court certainly had grounds upon which to found a trust, which do not exist in the case at bar.

We are cited to the case of *Gaylord et al.* v. *Cramer & Watson, Henry Probasco, et al.,* 1 Handy's Rep. 369. In that case, *Cramer & Watson*, being utterly insolvent, conveyed to *Probasco* certain leasehold premises; also, "all the goods, chattels, household furniture any and every-where

belonging to us;" also, "all our interest of every nature whatsoever in all debts now due, or to become due to us;" "to have and to hold the same to said *Probasco* forever." The consideration expressed in the bill of sale is $4,450.33 cash in hand paid, and the further payment of sundry sums to divers persons and firms amounting to $6,345. No estimate appears to have been made of the lease or of the household furniture, nor was any inventory or account taken of the stock at the time of sale or before. No money was actually paid, but was to be paid among creditors.

*Probasco* was a member of a firm who were creditors, and he testifies that he took the property not from any hope of profit, but to secure as much as possible for his firm. The argument of the court is upon this state of facts, that as no money was to be paid to *Cramer & Watson* individually, but the whole consideration was to be apportioned among their creditors, therefore that, so far at least as the purchase money was concerned, *Probasco* was a trustee for the creditors, and the trust was to be administered for the benefit of the creditors equally. We do not regard the argument as a sound one. The purchaser could have discharged his obligation, by a payment of the money to the vendor, at any time before the creditors had taken legal steps to reach the funds in his hands.

The argument, however, is answered by the decision in the case of *Anderson* v. *Smith and Others*, 5 Blackf. 395, where it was held by this court that "a person, being unable to pay all his debts, may sell his goods *bona fide* to another, in consideration that the latter *will pay the purchase money to a part of the vendor's creditors*, specifying them, though the preferred creditors have not assented to the sale." Mr. Justice *Sullivan*, in delivering the opinion of the court, uses this language: "There is no testimony in this case to warrant the conclusion that the transfer of the goods to *Rush* from *Anderson* was an *assignment for the benefit of Rush's creditors*. The sale was absolute and unconditional, and the obligation of *Anderson*, to pay for the.

goods by discharging certain debts due to certain individuals, equally so. *Anderson's* liability to pay the amount agreed upon was fixed, whether he sold the goods at all or not. *Rush* might have sold the goods for cash and paid his debts himself, or if unable to pay all, he might have paid such as he preferred to discharge. So he might sell to any person that would do it for him. His creditors have nothing to do with the transaction; their claims against him remained unchanged, to be enforced at their pleasure."

This authority, we conceive, disposes of the argument that would change an absolute sale into an assignment for the benefit of creditors, simply because the consideration passed, under the direction of the vendor, from the vendee to the creditors.

But the learned judge, in the case already cited, (*Gaylord et al.* v. *Cramer*,) was not content to rest the decision upon the argument. The opinion discloses the fact that, previous to the execution of the bill of sale, and on the same day, another instrument, covering the same property, had been prepared, executed, and delivered between the same parties, whereby " the entire proceeds of the property were to go to *Cramer & Watson's* creditors." " 1. The cash to be applied toward the payment of their borrowed money in full. 2. The debts of the house, contracted since the 1st of *May* last, were to be paid to the amount of seventy-five per cent., should the proceeds of the property go so far; if not, then *pro rata*. 3. The surplus, if any, was to be apportioned among the remaining debts." The delivery was complete, and though, under legal advice, the parties sought to change the transaction, at a later hour in the day, into the form, already stated, of an absolute sale, the court disregarded the form, and held the transaction an assignment for the benefit of creditors. " This assignment," it is said, " was directly within the letter, as well as within the spirit of the act relating to voluntary assignments. It was a conveyance by insolvent debtors, in con-

templation of insolvency, to a trustee, with the design of preferring certain creditors to the exclusion of others, and therefore, by the express provisions of the statute, it created an equal trust for all. The trust thus created and accepted could not be changed afterward by any act or agreement of the parties, (*Scull* v. *Reeves*, 2 Gree. Chan. Rep. 84; *Cunningham* v. *Fraber*, 11 Wen. Rep. 241;) and the attempt to do so, in the present case, by the destruction of the instrument, and the substitution of another, was wholly nugatory."

The case cited by the appellant of *Truitt, Brother & Co.* v. *Caldwell*, 3 Minn. Rep. 364, bears but slight resemblance to the one under consideration. There was a bill of sale, and an instrument executed by the vendee to the vendor, by which it was stipulated that the purchasers should account to him on the sale of the property; "and also to pay over the surplus, after satisfying their debt, and paying the expenses of disposing of the property, to the vendor or his order."

*Norton* v. *Kearney et al.*, 10 Wis. Rep. 443, is to the same effect. The *surplus* was not to go to the purchaser, but to the assignor or his creditors. These cases differ essentially in principle from the transaction before us.

It is urged that the fact that the appellee employed at a salary the grantor as his agent, and left the goods in his possession, shows the transaction to have been fraudulent. It has been held, in *Hall and Others* v. *Wheeler*, 13 Ind. 371, that such employment may be made, and that "the circumstance might excite suspicion, but not conclusively prove fraud." Where, as in this case, the purchase was of a stock of goods in a store, and an established trade existing, it seems but reasonable that, at a fair salary, the grantor might be employed, for a time at least, to continue in charge of the business, and that circumstance will not in itself prove the transaction fraudulent. See *Griffin* v. *Cranston et al.*, 1 Bosworth, N. Y. Sup. Ct. 281.

The law is this: The whole circumstances of the transaction must be looked at, and where full value is to be paid, and the consideration applied or secured, as in this case, to the payment of the debts of the grantor, with no purpose to delay other creditors, there can be no fraud in the transaction; and the fact that a creditor, by purchasing the goods, and assuming liabilities which he is pecuniarily able to meet, in securing his debt, as an incident, pays also debts of creditors preferred by the grantor above other creditors, can not impeach the contract.

The court below found, that " the sale of the horse, carriage, and harness was for a consideration, but was not accompanied by the possession, and was a fraud upon creditors, such as the execution plaintiffs are, and should not be sustained."

This was but part of an entire transaction, and can not be severed. The court found the sale of the stock of goods *bona fide*, and this was but part of the same contract; and being included in the gross sum to be paid, and that being the full value, and being applied in payment of the debts of the grantor, the fact that he did not take possession can not injure the creditors. These facts, with the additional one that the *purpose* of the creditor was to secure his own liability, and not to delay other creditors, rebuts the presumption of fraud, created by leaving the goods in possession of the vendor. The court below seem to have held the delivery of the goods in the store as complete, and therefore a *bona fide* sale; and at the same time found that, although the entire sale was for full value, and to secure the purchaser's own indorsements simply, and that the proceeds went to pay the debts of the vendor, still the failure to secure the possession of the horse, carriage, and harness rendered so much of the transaction fraudulent and void against creditors. The finding and judgment should have been in favor of *Annesley*, for all the property. This error would require a reversal of the judgment below, and a new trial; but the appellee has

waived in his brief his assignment of cross error, and the judgment will therefore be affirmed.

Judgment affirmed, with costs.

*Randall Crawford* and *Henry Crawford*, for appellant.
*Thomas L. Smith* and *M. C. Kerr*, for appellee.