## MARTIN ET AL V. OGDEN.

1.  MORTGAGE :   *Possession retained by mortgagor.*
    A mortgage of articles of merchandise containing a provision that the
    mortgagor may remain in possession and sell, and none that the pro-
    ceeds of sale shall be applied to the mortgage or so invested as to fix
    a continuing trust upon them for the purposes of the mortgage, is
    void save between the parties.

2.  SAME :   *Unrecorded, when and how far good.*
    A mortgage free from fraud though unrecorded, creates a valid lien,.
    remaining after the death of the mortgagor, against his administra-
    tor, heirs and general creditors, whether their debts existed at the
    date of the mortgage or were created afterwards and upon faith of

the property and without notice of the mortgage, and regardless of the merits of the creditors' claims; but as to attaching creditors, or persons obtaining specific liens, or even subsequent purchasers with full knowledge that they are defeating another's lien and who intend to do so, it is void, however honestly made.

3.  SAME:  *Pleading—allegations of fraud.*

   Though a mortgage is neither alleged nor proved to be made with base motives, it may nevertheless be held to be fraudulent if the facts justify the conclusion.

4.  MORTGAGE:  *Fraud, presumption of.*

   Fraud may be presumed not only from the face of the instrument but from concurrent acts, surrounding circumstances and subsequent conduct of the parties to the instrument reflecting light on their original intentions.

5.  SAME:  *Same*:  *Mortgagor remaining in possession.*

   The presumption of fraud arising from the vendor or mortgagor remaining in possession is one of fact and not a conclusive presumption of law.  And even such a presumption of fact does not necessarily arise where the possession follows the provisions of the deed or where there is a mere mortgage.  It is a question for the jury, or in equity, for the chancellor, under all the circumstances.

APPEAL from *Crawford* Circuit Court in Chancery. Hon. JAS. A. YANTIS, Special Judge.

*Jesse Turner*, for appellants.

1.   The failure to record a mortgage until after the death of the mortgagor, and until after the rights of general creditors had intervened, will not render such mortgage void, as to such creditors.   *Haskell v. Sevier, 25 Ark., 152; 12 Ohio St., 38–47; Jones Ch. Mort., p. 208, sec. 240.*

2.   A mortgage on merchandise, the mortgagor remaining in possession, selling and replenishing in the usual course of trade, where the consent to sell does not appear on the face of the instrument and there is no agreement *aliunde* that such a course may be pursued, is not fraudulent *per se* as to creditors.   *9 Ala., 305; 27 Ib., 336, 49 Ga., 313; 50 Ib., 425; 2 Woods, 443; 22 Kan.,*

127; 24 Iowa, 324; 7 Bush., 29; 1 Metc., 346; 6
Dana, 182; 59 Me., 372; 10 Md., 466; 121 Mass.,
404; 2 Pick. Mass., 607; 35 Mich., 28, 229; 37 N.
J., 201; 15 N. B. R., 150; 80 N. C., 161; 11
Iredell, 347; 12 R. I., 9; 3 Tex. L. J., 593; 3 Cent.
L. J., 286; Jones Ch. Mort., secs. 383–5–8–9, 390–4,
401–2–5–7, 411–12, 419; 7 Mich., 519; 6 Minn.,
305; 21 Id., 187; 6 Neb., 216; 19 N. Y., 123; 5
Abb. N. C., 184; 42 N. Y., 204; 22 Alb. L. J., 115;
6 Hun., 231; 76 Ill., 479, etc., etc.; 11 Cent. L. J.,
21; Jones Ch. Mort., p. 266, 361; 31 Ark., 556; 23
Ark., 258; 30 Ark., 417.

There is no allegation or proof of actual or intentional
fraud.

B. J. Brown, for appellee.

1.   The weight of authority is against the validity of such
mortgages as against the creditors.   10 Cent. L. J., 281
to 427; 2 South. Law Rev., (N. S.), 731; 22 Wal. U.
S. S. C. Rep., 513; Jones Chat. Mort., Ch. IX.

2.   Appellee gave credit on the faith that he was the
owner of the goods and that they were free from incum-
brance.   He had no notice actual or constructive.   The
mortgage not filed for record until after the death of mort-
gagor, and for four years the mortgagor was allowed to use,
control and dispose of the stock as his absolute property
without accounting for the proceeds or liquidating the debt.

3.   This mortgage, if valid, would not cover after-
acquired stock.

## STATEMENT

EAKIN, J.   It appears from the pleadings and exhibits in
this case, that in June, 1878, A. Wallace Ward executed to
Samuel Martin and James L. Austin, as trustees of the
estate of John Austin, a conveyance of all his stock of drugs

in a certain store house in Van Buren, to secure a debt, then due, of $1,802.28. They were empowered to sell the same for cash upon specified notice, to the highest bidder, at public sale, with power in the trustees to purchase, and to apply the proceeds, after expenses of sale, to the payment of the debt. The balance, if any, to be paid the grantor. Although no provision was made, in the deed, for the purpose, yet by tacit consent of the trustees, the grantor remained in possession of the stock, continuing to sell and replenish in the course of business. The instrument was acknowledged on the 23d of September following, but never recorded before the death of Ward, which occurred in January, 1882. At the time of its execution Ward was indebted to the appellee Ogden, by note, in the sum of $678.95, and also to some extent for services rendered as clerk in his drug store. Ogden, without actual or constructive notice of the trust deed, continued to serve until the death of Ward, or rather, till the end of the year 1881. After the death of Ward, James L. Austin, one of the trustees, was appointed his administrator, to whom Ogden exhibited his account properly authenticated, and who allowed the same, for balance on note, $571.74, and balance on account, $821.48. The probate court had not afterwards met at the time this suit was commenced, to give Ogden the opportunity of having his claim allowed and classified by the court.

Austin had taken out letters on the third day of February, 1882, and on the twenty-first, upon application to the probate court as administrator, had obtained an order allowing him, as administrator, to sell the stock of drugs, fixtures and furniture at private sale, as he might deem best for the interest of the estate. It does not appear that he had taken any steps to carry this order into effect. Before his appointment as administrator, but after the death of Ward, the

trust deed had been filed for record on the 29th of January, 1882.

On the twenty-fifth of February, 1882, the trustees gave public newspaper notice that on the twenty-first of March they would sell the stock of drugs under the trust deed for the payment of the debt secured. Thereupon Ogden, on behalf of himself and the creditors of the estate, filed this bill against the trustees, setting up the facts, and alleging that he would not have given credit to Ward to the extent of his claim if he had known of the deed of trust, and asking, only, that upon final hearing the trustees be perpetually enjoined from selling, and that until the cause be heard they be restrained. There is no prayer for general relief.

The defendants answered, denying no material fact, but only denying fraudulent intent, and insisting upon the validity of the deed of trust. Upon hearing, the injunction was made perpetual, and the trustees appealed.

### OPINION.

1. MORT-GAGE. Possession retained by mortgagor. Since the decision of *Lund v. Fletcher et al, 39 Ark.,* 325, it must be taken as the settled doctrine of this court, that a mortgage of articles of merchandise containing a provision, that the mortgagor may remain in possession and sell, and no provision that the proceeds of sale shall be applied to the mortgage, or so invested as to fix a continuing trust upon them for the purposes of the mortgage, is invalid save between the parties. The doctrine in that case was cautiously qualified and guarded, because of the doubts which have perplexed other courts in analogous cases, and the multiplicity of conflicting decisions in different state and federal courts.

This case does not come within the purview of that principle; and we must now proceed further and determine whether or not, as against creditors having no notice at the

time the credits were given, a mortgage of personal chattels can be sustained which, upon its face, presents no inherent vice, and concerning which there is no express allegation, nor proof of actual fraud ; but under which the mortgagees or trustees have taken no possession, and have allowed the mortgagor or grantor to remain in possession, and sell without giving any account of the proceeds. That is the case presented by this record. It is not conceived that, if recorded at all, the time of recording can, in this case, make any difference. If not valid against creditors if recorded in the lifetime of the grantor, it would not be so if recorded after his death, If it would have been valid if recorded in his lifetime, it would be equally so when recorded after his death, for general creditors have no special liens to be displaced ; and our statute, which makes all mortgages liens from the time they are filed for record, contains no provision that they shall be filed in the lifetime of the grantor.

It is no longer open to question in this State, that a mortgage of real property unaffected with fraud, but unrecorded, creates a valid lien, remaining after the death of the mortgagor, against administrators, heirs, devisees, and general creditors, and there is no reason why the same doctrine should not apply to personalty. See *Haskill, adm'r., v. Sevier, ad., et al, 25 Ark., 156.* And this applies whether the debts of the creditors were in existence when the mortgage was made, or were created subsequently, upon the faith of the property, without notice of the mortgage, and regardless of the merits of the creditor's claim. Upon the other hand it is as much closed from question that an unrecorded mortgage, however honestly made, is wholly invalid against attaching creditors, or persons obtaining a specific lien, or even subsequent purchasers who take with the full knowledge that they are defeating another's lien, and who

2. SAME: Unrecorded: When and how far good.

intended to do so.  See *9 Ark., 112; 20 Ib., 190; 18 Ib., 105; 33 Ib., 203; 37 Ib., 94.*

These rules have now become so fixed that it would be unwise, in this court, to attempt their change or modification.  Whatever in them there may be incongruous or shocking to a sense of equity, has resulted from efforts to effect legislative intention, and it devolves on the legislature to bring our equity jurisprudence in harmony with the moral sense of the most civilized peoples.  The simple question left for us here is, was this mortgage fraudulent, either in fact or by legal presumption?

3. SAME: Pleading: Alleging fraud. It was neither alleged nor proved to have been made with base motives, but may be held fraudulent if the facts justify the conclusion.  It has many of the indications of fraud by presumption, which existed in the well known *Twynne's case.*

4, FRAUD: Presumption of. That presumption may grow, not alone from the face of the instrument, but from concurrent acts, surrounding circumstances and subsequent conduct of the parties to the instrument, reflecting light upon their original intention.  The more modern and better doctrine is that this is a presumption of fact, and that no conclusive legal presumption

5. SAME: Mortgagor remaining in possession. arises from the fact that the vendor remained in possession, and that even such a presumption of fact does not necessarily arise where the possession accompanies or follows the deed, or where there is a mere mortgage.  It is a question for a jury, or, in equity, for the chancellor, under all the circumstances.

If the mortgage had been merely of articles, beneficial in the use, such as tools, agricultural implements, railroad equipments, horses, mules, etc., then it would be natural and proper that the owner should remain in possession and have that use, not only for his own convenience, but the better to enable him to pay the debt; and future acquisitions of such property may be brought within the mortgage, and provisions for their change and replacement as necessity or

convenience may require, may be properly made. See case of *Lund v. Fletcher*, *supra*.

But drugs in stock are kept solely for merchandise and have no other use than for sale, and disappear on selling. The parties would not have been allowed to provide that the mortgagor might remain in possession and dispose of drugs in the course of trade, without applying the proceeds to the debt, or in some way attaching to them or their fruit, a continuing trust, and at the same time make continual additions to the stock, all to be protected by the mortgage against creditors. It is evident that one might continue business all his life that way, secretly investing all surplus profits for the benefit of himself and family, and always keeping enough in stock to satisfy the demands of his trade, with perfect impunity—that is if his mortgagee were allowed thus to protect and shield him. It is no answer to say that by this course the mortgagee's security is diminished also. That would be his own business if true, but he would have no right at his own risk to enable his debtor to defraud every body else. That would violate the maxim of *"sic utere tuo"* etc. Besides it would be an easy matter to keep always in sight enough to satisfy the mortgage and not enough more to tempt other creditors to grasp after the surplus. According to ordinary human motives, a creditor thus favoring a debtor, might rely upon his complaisance to that extent.

Why should parties be allowed to *do* with impunity the very things which the law tells them they shall not *agree to do?* Yet it seems to us, that the able counsel for appellants are urging upon us that they must be ; because, as they say, the mortgage contains no such stipulations and is not void upon its face, and that matters are not necessarily fraudulent when done, which the law would have held fraudulent in them to stipulate to do.

In this case it appears that when the grantor gave the

19—R

deed of trust he was largely in debt, at least to one other creditor, who was his clerk; owing him not only by note, but for unpaid services; that it was kept secret even from this clerk, who of all others would have been apt to know it, and was most interested to know it, and who in good faith *ought* to have been advised of it. That the grantor, with the assent, at least tacitly given, of the trustees, proceeded in the business as if he were true owner, for more than three and a half years, selling and replenishing, and rendering no account of the proceeds to anybody; that he went on availing himself of the services of his clerk, without paying him, that the clerk relied upon his employer's apparent ownership and increased his credit; that after the grantor's death, the trustees, or one of them, accepted the administration of the estate, getting control and possession thereby of the stock; and then having all in their own hands, they advertised a sale of the property under the trust deed.

Whatever views the trustees and the grantor may have had of these transactions, we think the chancellor did right in enjoining the sale perpetually. Conceding honesty of intention, and the complainant does not seem to desire to question that, this belongs to the class of cases in which courts hold transactions fraudulent from public policy.

The perpetual injunction is against Austin and Martin, in their charactar as trustees. It will not prevent Austin from proceeding as administrator with such sales as the probate court may direct.

Affirm.