ADLER-GOLDMAN COMMISSION COMPANY *v*. PHILLIPS.

Opinion delivered October 17, 1896.

DEED—CONSTRUCTION.—A deed, conveying all the grantors' stock of merchandise and accounts in a storehouse to a trustee to secure the payment of certain debts to specified persons, provided that the grantors should remain in possession, and sell the goods and collect the accounts, and apply the proceeds to payment of such debts, in the order in which they become due; that, after the debts shall have been paid in full, the conveyance shall become void, and all the property revest in the grantors absolutely; and that, in case of mismanagement or default in payment, the trustee, on demand of the creditors, shall take possession and sell the prop-

erty, after giving notice. Some of the debts were due at the time the deed was executed. *Held*, that the instrument was not a deed of assignment, but a deed of trust to secure the payment of debts.

DEED OF TRUST—CONTROL AND COMPENSATION OF GRANTOR.—A deed of trust to secure creditors is not void by reason of a provision therein that the grantors shall remain in possession and control of the stock of goods conveyed until default in payment of the debts, and shall sell the goods for cash, and collect the outstanding indebtedness, paying the proceeds into a bank for the creditors secured, after deducting only the necessary expenses of carrying on the business and the living expenses of the grantors.

Appeal from Independence Circuit Court.

JAMES W. BUTLER, Judge.

*Rose, Hemingway & Rose* and *Gustave Jones* for appellant.

1. The interplea should have been transferred to the chancery docket with the rest of the case.

2. The deed was plainly intended as an assignment. 54 Ark. 430; *id*. 6. The provision that on payment it is "to become void, and all of said property to revest in the grantors," does not affect the question. Burrill, Assignments, p. 695, appendix sec. 2, (6 Ed.) As the law would imply a condition of that sort, its insertion does not change the quality of the instrument. 18 Ark. 123; Brown, Leg. Max. sec. 519; 59 Ark. 278. See also 58 Ark. 294; 3 Pars. Cont., sec. 272; 56 Ark. 314. A fund is here raised to be distributed to creditors. 56 Ark. 314; 23 N. E. 646; 131 Ill. 251; Burrill, Assignments, sec. 2, n. 2. The conveyance possesses every element of an assignment. (1) It is made by merchants of their entire stock in trade, notes and accounts. (2) It is made to pay debts, as far as the assets extend. (3) It is made to raise a fund to pay these debts. (4) It reserves no right of redemption. (5) The condition was broken as soon as made, and the grantee was entitled to immediate possession. See 52 Ark. 50; 53 *id*. 538; *id*. 101. The deed stipulates for a method of sale

different from that prescribed in the statute regulating assignments, and is void.    59 Ark. 64; 37 *id* 150; 47 *id*. 367; 53 *id*. 88; 54 *id*. 429; *id*. 64; 18 *id*. 123, 125; 53 Mo. App. 107; Bump, Fr. Conv. 47.

3.    Whether regarded as a mortgage or as an assignment, the conveyance to Phillips was plainly fraudulent and void on its face. . The mortgagors were to remain in possession, to sell the goods in the regular order of business, collect debts, deposit proceeds in bank for mortgagees, deducting only necessary expenses of mortgagors, and "*the living expenses of*" mortgagors.    24 N. Y. 364; 82 Ala. 467.    A mortgage of a stock of goods, with provision that the grantor shall remain in possession, carrying on the business in the usual way, is void, as against attaching creditors, unless the mortgagee takes possession before the attachment lien is fixed.    95 Mo. 132; 6 Am. St. Rep. 32 and note; 46 Ark. 127; 6 D. C. 273.    By this last provision, the mortgagors reserved for themselves a support for life, or as long as the mortgagees should choose to keep other creditors at bay.    That this clause rendered the mortgage void is plain.    There never was but one case holding the reverse,—15 Johns. 571, reversing 2 Johns. Ch. 564, and this case has been repeatedly overruled. 2 Bigelow, Fraud. Conv. 272; 6 Hill, 438; 116 N. Y. 410; 89 N. Y. 270, 280; Bigelow, Fraud. Conv. p. 272, n. 6; 2 Comstock, 371; 6 Binn. 338; Wait, Fr. Conv. sec. 326; 55 N. W. 108; 11 So. 726; 12 S. E. 375; 107 N. C. 405; 89 Ala. 561; 19 Pac. 346; 17 Ala. 554; 69 Mo. 441; 43 Wis. 116; 91 Ala. 401; 6 Wall. 78; 31 Ill. App. 67; 37 Mo. 500; 15 *id*. 459; 25 Or. 15; 126 Ill. 525; Burrill, Assignments (6 Ed.), sec. 167; 47 Ark. 347; 15 Am. & E. Enc. Law, p. 775, n; 13 Wis. 629; 54 Ark. 418.

4.    A new trial should have been granted on the ground of surprise.    23 Neb. 485; 38 Iowa, 434; 5 How. (Miss.) 539; 9 Bush, 66; 80 Cal. 330; 81 *id*. 268; 59 Ark.

162; 17 Fed. 667; 32 Conn. 402, 22 Ind. 107; 31 Conn. 334; 53 Wis. 169; 74 Iowa, 227; 62 Cal. 263; 5 Burrow, 2631.

*Morris M. Cohn*, for appellee.

1.  The interplea of Phillips was properly tried before a jury. Having taken a change of venue, appellant could not afterward allege that the court had not jurisdiction. 156 U. S. 680; 156 *id*. 689-92; 157 *id*. 198, 201; 13 How. 307. The doctrine of estoppel is as applicable at law as in equity. 13 How. 307; 2 Whart. Ev. sec. 836; 25 Ark. 108, 112; 52 *id*. 458; 24 *id*. 584. While it has been held to be the duty of the court to transfer equitable issues to the chancery docket (39 Ark. 248; 49 *id*. 20; 52 *id*. 411, 415), it has been decided that a mere transfer to equity does not give a right to equitable relief. 31 Ark. 597; 47 *id*. 205. But the issue in this case was a purely legal one, and to deprive Phillips of a trial by jury, would be unconstitutional. 56 Ark. 391, 396; 49 *id*. 492, 498. At any rate, a trial by jury was permissible. It lay in the discretion of the chancellor. 48 Ark. 426; Sand. & H. Dig. sec. 374; 58 Ark. 446, 451. Matters of form, as getting on the wrong docket, are disregarded. 34 Ark. 93, 105. If erroneous, it is harmless. 46 Ark. 542; 43 *id*. 535; 27 *id*. 306; Sand. & H. Dig. sec. 5772.

2.  No error was committed in trying the intervention before the attachment issue. Phillips had nothing to do with the attachment issue. He could not be heard on that issue. 47 Ark. 31; 71 Fed. 151; 33 Ala. 526; 47 *id*. 125; 17 S. C. 116, 120. No motion for continuance was filed. Sand. & H. Dig. secs. 5797, 5799. No merit was shown in the motion for a new trial, on the ground of surprise. 24 Ark. 264; sec. 26 *id*. 496; 29 *id*. 225; 33 *id*. 91; 24 *id*. 659; 41 *id*. 229. The ground of countinuance, or for setting aside a

judgment, must be meritorious. 59 Ark. 162; 33 Cent. Law J., 28; 34 Pac. 352; 52 Kas. 743; 18 S. E. 953; 34 Pac. 294: 9 Utah, 338; 35 Ill. App. 361.

3. The deed was not void on its face, and, if not, was not void for anything proved in the case.

(*a*) It is not an assignment, but a deed of trust. 57 Ark. 222; 58 *id*. 293; 53 *id*. 101; 54 *id*. 229; 56 *id*. 314; 59 *id*. 270. The old doctrine of 52 *id*. 30 and 54 *id*. 6, is suspended by these later and better decisions. See also Elphistone, Int. Deeds, Rule 9, pp. 40–46; 2 White & Tud. L. C. in Eq. part 1, p. 89; 32 S. W. 493; 33 Ark. 119, 237; *ib*. 762. Such a trust would be enforced, even in the absence of a trustee, by a chancery court. 4 Ark. 302; 53 *id*. 124, 130. On the question of intention, the verdict is conclusive. 54 Ark. 229.

(*b*) The deed is not fraudulent because it provides that until default the debtors "may proceed to sell * * * goods in the regular order of business for cash, and to collect outstanding debts, and shall pay * * * the amount of sales, * * * etc., after deducting only the necessary expenses," etc. Until default the trustee was not entitled to possession, and the deed was duly recorded. Jones, Ch. Mortg., sec 381 (2 Ed.); 139 U. S. 266, 271; 3 Cr. 73, 89; 15 N. Y. 9, 120; Bump, Fr. Conv. (2 Ed.) 40; 1 Jones, Mortg. Real Prop. (2 Ed.) secs. 771–2; 41 Ark. 193; 152 U. S. 527; 123 *id*. 436; 152 *id*. 534; 58 Ark. 297; 46 *id*. 129; 46 *id*. 131; 55 *id*. 77; 18 *id*. 123; 23 Ind. 285; 22 Kas. 128; 25 Pac. 888; 69 Tex. 161; 19 S. W. 705; 29 Pac. 698; 26 *id*. 706; 23 N. W. 386; 19 *id*. 657; 17 N. E. 159; 29 Pac. 985; 60 Fed. 346.

4. The instructions given fully cover the case, and it was not improper to refuse other instructions. 46 Ark. 141; 52 *id*. 180; 37 *id*. 108; 35 *id*. 585.

*Yancey & Fulkerson*, *J. W. Phillips*, and *M. M. Stuckey*, also for appellee.

1.   The court properly refused to transfer to equity. 58 Ark. 445; 38 *id.* 329; 15 *id.* 128; 11 *id.* 180; Sand. & H. Dig. sec. 5707.

2.   The court properly refused to declare the deed an assignment. It was a deed of trust.   32 Ark. 255; 60 *id.* 433; 23 *id.* 264; 4 Am. St. 461; 28 *id.* 528; 19 *id.* 907; 106 U. S. 654; 42 *id.* 521; 5 S. W. 636; 58 Ark. 295; 54 *id.* 229; *ib.* 428.

3.   The court properly refused to declare the instrument void on its face.   123 U. S. 436–442; 55 Ark. 77; 58 *id.* 296.

4.   The court properly refused a new trial on the ground of surprise.   16 Am. & E. Enc. Law, 516; 18 Ark. 574; 20 *id.* 62; 41 *id.* 231; 26 *id.* 503; 17 Nev. 417; 76 Ga. 21; 3 Sm. & M. (Miss.), 439.

BATTLE, J.   Adler-Goldman Commission Company commenced an action against Charles Bloom, Ben Bloom, and Morris Bloom, partners doing business under the name and style of Bloom Bros. and C. Bloom & Co., on two notes and an open account, and sued out an order of attachment, and caused the same to be levied on certain property.

Joseph W. Phillips filed his complaint in the case, and claimed the property under the following instrument:

" This indenture, made and entered into by and between Charles Bloom, Ben Bloom and Morris Bloom, partners as C. Bloom & Co., parties of the first part, Joseph W. Phillips, party of the second part, trustee, and the Lawrence County Bank, R. Lambeth, Kaminer, Prinz & Co., Isaac Less, Dave Bloom, Schwab Clothing Company, H. Arndt, and the Little Rock Mill and Elevator Company, parties of the third part, witnesseth :

'That whereas, the parties of the first part are now indebted to the parties of the third part as follows:   The Lawrence County Bank in the sum of three hundred and seventy-one dollars and seventeen cents

($371.17), as evidenced by their promissory note of this date, payable in thirty days, with 10 per cent. interest from date until paid, with I. Less surety; *to R. Lambeth in the sum of five hundred dollars ($500), as evidenced by their promissory note of——January, 1893, and due and payable on the 1st day of July, 1893, with 10 per cent. interest from date until paid, with I. Less as surety;* to Kaminer, Prinz & Co. in the sum of ten hundred and forty eight dollars and seventy five cents ($1,048.75), which is to become due and payable in equal installments of three hundred and forty nine dollars and fifty eight cents ($349.58), as is evidenced by their three promissory notes of this date, the first one of which is to be due and payable 60 days after date, the second one is to be due and payable 90 days after date, and the third and last one to become due and payable 120 days after date, each of which is to bear interest at the rate of 8 per cent. per annum from maturity until paid; to I. Less in the sum of three hundred dollars ($300), as is evidenced by their promissory note to become due and payable 120 days after date, and bearing 10 per cent. interest from date until paid; to *Dave Bloom the sum of seven hundred dollars ($700) upon an account which is now due, but upon which he is willing to extend the time of payment in consideration of these presents;* to Schwab Clothing Company in the sum of five hundred and twenty six dollars ($526), as is evidenced by their promissory note, payable 90 days from date; to H. Arndt in the sum of one hundred and forty dollars ($140), to become due and payable 60 days after date, as is evidenced by their promissory note bearing date the same as this instrument; and to the Little Rock Mill and Elevator Company in the sum of one hundred and seventy eight dollars ($178) upon an account of goods, wares and merchandise, the full payment of which said debts the parties of the first part are anxious to secure.

"Now, therefore, for.the purpose of securing the payment of said debts, and in consideration of $1 cash in hand paid to the parties of the first part by the parties of the second part, the parties of the first part have this day bargained, granted and sold to the party of the second part all of their general stock of merchandise and accounts now in the storehouse now occupied by them as a place of business in the town of Walnut Ridge, in the county of Lawrence, State of Arkansas, together with all the store fixtures therein.

"To have and to hold to the said party of the second part, and to his heirs and assigns.   This conveyance is. however upon condition and for the purpose of paying the indebtedness aforesaid, *and at the time that it may become due, the parties of the first part to remain in possession of all the property herein conveyed until default is made; and it is expressly understood and agreed that they may proceed to sell any of said goods in the regular order of business for cash, and to collect any outstanding indebtedness; and shall pay at the end of each week into the Lawrence County Bank the amount of sales for said week, after deducting only the necessary expense of carrying on the sales, such as rent of building, clerk hire, and the living expenses of the party of the first part; and the amount of said sales to be immediately applied by them, through said bank, to the payment of the above mentioned debts in the order in which they become due; and after all of said indebtedness* hereinbefore described and mentioned·has been paid in full, with any accrued interest thereon, then this conveyance to become void, and all of said property revest in the grantors absolutely. *It is further agreed and understood that the expenses of carrying on the business, until the before mentioned indebtedness shall be fully paid, shall be limited to the least practical sum, considering the successful management of the conveyed property;* but if

the parties of the first part shall make default in the payment of either of the above mentioned debts at the time it becomes due, or should they injure the security herein intended to be given in any manner by their neg-.lect or mismanagement, then it shall be lawful for the party of the second part to, *on demand of the parties of the third part*, take possession of all the property herein conveyed, and, after giving twenty days' notice by printed posters, posted in five public places in Lawrence county, offer all of said property for sale to the highest bidder for cash.   The accounts and evidences of debt he shall collect in the regular course of business, and with the proceeds of said sale he shall pay off and discharge the above indebtedness in full, if there be a sufficient amount; but if the amount be insufficient, then he shall pay all the debts *pro rata*, according to the respective interest of all the parties thereto.   Money received from the collection of accounts and evidences of debt to be applied in the same manner; and, if anything remains, to be paid to the parties of the first part or their legal representatives.

"Witness our hands and seals on this the 15th day of December, 1893.

"C. BLOOM & Co.,   (L. S.)
"C. BLOOM,          (L. S.)
"BEN BLOOM,         (L. S.)
"MORRIS BLOOM.    (L. S.)"

The plaintiff answered the complaint, alleging that the conveyance relied on was fraudulent; that the debts mentioned therein were simulated ; and that the conveyance was an assignment, which, not being made in conformity with law, was fraudulent and void on its face.

Afterwards, on the 19th day of January, 1894, the court made an order that the main issue in the attachment proceeding be tried first, and that the issue formed by the answer to Phillips' complaint be tried afterwards.

On the 27th of April, 1894, the court, being held by a special judge, recited the order made on the 19th of January, 1894, and directed that, so far as said order related to the then present term, it should be sustained.

On the 26th day of September, 1894, the plaintiff filed a motion, copying the order made on the 19th of January, 1894, and that made on the 27th of April, 1894, and moving that the trial of the issues joined by the complaint of Phillips and the answer thereto be postponed until the trial of the issues in the attachment proceeding according to these orders; but on the 27th of September the court overruled said motion, and directed that the claim of Phillips be tried at once.

On the 28th of September, 1894, a jury was impaneled, and the claim of Phillips was tried. There was a verdict in his favor, and judgment accordingly; and the plaintiff, after filing a motion for a new trial, which was overruled, and a bill of exceptions, appealed.

Appellant complains of being forced into trial on the 28th of September, when it was not ready. It insists that it was taken by surprise, and that its motion for a new trial should have been granted on that ground. The evidence relied on to support this contention were the orders made on the 19th of January, 1894, and on the 27th of April, following. But there was evidence sufficient to sustain the finding of the court to the contrary. The motion filed by it on the 26th of September indicates as much. Then, again, there was no sufficient showing for a continuance.

Appellant contends that the deed relied on by Phillips is an assignment, and, as such, is void, because it stipulates for a method of sale different from that prescribed in the statute regulating assignments. The reasons given for this contention are: "It is a conveyance by merchants of their entire stock in trade, notes

*Construction of deed.*

and accounts. (2) It is made for the purpose of paying, as far as the assets may extend, the debts due to several creditors. (3) It is made for the purpose of raising a fund to pay off these debts, and not to furnish security for their future payment.  *  *  *  *  (4) It does not reserve any right of redemption. It does not provide for the paying off the debts from money derived from any source, save from the sale of the goods and the collection of the choses in action. Nothing of the sort was contemplated or thought of. (5) The condition was broken as soon, as made, and the grantee was entitled to instant possession."

An examination of the deed will show that the reasons assigned for this contention are not true. The deed recites: "That whereas, the parties of the first part are now indebted to the parties of the third part, as follows: (it then describes the debts) the full payment of which said debts, the parties of the first part are anxious to *secure*. Now, therefore, for the purpose of *securing* the payment of said debts, and in consideration, etc., the parties of the first part have granted, bargained, and sold to the party of the second part all their general stock of merchandise and accounts in the store house now occupied as a place of business in the town of Walnut Ridge, in the county of Lawrence, State of Arkansas, together with all the store fixtures therein" (not all of their property). And, after authorizing the party of the first part (mortgagors) to remain in possession of the merchandise, and sell the same, and collect the accounts, it then says: "The amount of said sales to be immediately applied by them, through said bank, to the payment of the above mentioned debts, in the order in which they may become due, and, after all of said indebtedness hereinbefore described and mentioned has been paid in full, with any accrued interest thereon, then this conveyance to become void, *and all of*

*said property revest in the grantors absolutely.*"   How
can all of the property revest in the grantors abso-
lutely if it was to be sold, and the proceeds applied
to the payment of the debts without the privilege of
redeeming?

But it is said that some of the debts secured were
due when the deed was executed, and that "the condi-
tion was broken as soon as made, and the grantee was
entitled to instant possession."   It is true that two
or more of the debts were due, but the deed pro-
vides, in reference to the time when the trustee may
take possession, as follows:   "But if the parties of the
first part shall make default in the payment of either of
the above mentioned debts at the time it becomes due,"
etc., "then it shall be lawful for the party of the sec-
ond part (trustee) to, *on demand of the parties of the
third part* (secured creditors), take possession of all the
property herein conveyed, and, after giving twenty days'
notice by printed posters, posted in five public places in
Lawrence county, offer all of said property for sale to
the highest bidder for cash."   It shows that many of
the debts secured were not due at the time it was exe-
cuted, and provides that they shall be paid when due,
and authorizes the mortgagors to remain in possession
of the property conveyed, and sell the goods in the reg-
ular order of business, and to collect any outstanding
indebtedness, which could not be done if the trustee
took immediate possession, and converted the property
into money for the payment of the debts.   And this,
in connection with other portions of the deed, shows
that no absolute appropriation of property for the
payment of debts was intended to be made.

In *Robson* v. *Tomlinson*, 54 Ark. 229, Chief Justice
Cockrill, delivering the opinion of the court, said:
"Neither the possession of the goods, nor the unreason-
ableness of the debtor's expectation of paying the debt

at maturity, nor his intent never to pay, is the criterion
for distinguishing a mortgage from an assignment.
The controlling guide, according to the previous decis-
ions of this court, is, was it the intention of the parties,
at the time the instrument was executed, to divest the
debtor of the title, and so make an appropriation of the
property to raise a fund to pay debts?  If the equity of
redemption remains in the debtor, his title is not
divested, and an absolute appropriation of the property
is not made."  *Richmond* v. *Miss. Mills*, 52 Ark. 30 ;
*Fecheimer* v. *Robertson*, 53 *Ib.* 101; *Box* v. *Goodbar*, 54
Ark. 6; *Penzel Company* v. *Jett*, *id.* 428; *Wood* v. *Adler-
Goldman Com. Co.* 59 *id.* 270; *Marquese* v. *Felsenthal*,
58 *id.* 293; *Smith* v. *Empire Lumber Co.* 57 *id.* 222.

Guided by the previous decisions of this court, we
hold that the conveyance in question was not a deed of
assignment, but a deed of trust to secure the payment of
debts.

<span style="float:left">Effect of<br>grantors'<br>retaining<br>compensa-<br>tion.</span>But it is contended that, let the instrument in con-
troversy be what it may, it is void on its face, because
it provides that the grantors may remain in possession
of the property conveyed until default in the payment
of the debts secured, and sell the goods in the regular
order of business for cash, and collect any outstanding
indebtedness, and pay at the end of each week into the
Lawrence County Bank the amount of sales for said
week, after deducting only the necessary expense of
carrying on the sale, such as rent of building, clerk
hire, and the living expenses of the grantors.  Upon
the question presented by this contention, there is a
contrariety of opinion by the courts of the different
states.  In *Lund* v. *Fletcher*, 39 Ark. 334, a summary
of these opinions is made.  In that case, after making
this summary, this court held, "that a mortgage of
articles of merchandise containing a provision that the
mortgagor may remain in possession and sell, and no

provision that the proceeds of the sale shall be applied
to the payment of the mortgage, or so invested as to fix
a continuing trust upon them for the purposes of the
mortgage, is invalid, save between the parties." *Mar-
tin* v. *Ogden*, 41 Ark. 186; *Gauss* v. *Doyle*, 46 Ark. 122.

In *Gauss* v. *Orr*, 46 Ark. 129, the mortgage in
question contained this clause: "It is agreed that I,
(the mortgagor) am to hold possession of my stock of
goods during the will of said Orr & Lindsay, and retail
the same, and account to said Orr & Lindsay each week
after this week for the proceeds of sales, and to pay $50
thereof, if not more, each week until said sum (the
mortgage debt) is fully paid, said $50 per week to be
paid without regard to the amount of sales." This
court construed this clause as meaning "that the mort-
gagor should sell for the mortgagee's benefit, and
account to them for the proceeds; that if the proceeds
of sales should not reach $50 a week, that sum should
be paid nevertheless, and that the first settlement and
account of sales should be made the next week after the
mortgage was executed;" and held the mortgage to
be valid.

There is no good reason why a mortgagor of a stock
of goods should not remain in possession and sell them
in the usual course of trade, provided he sells for the
benefit and as the agent of the mortgagees, and receives
nothing further than a mere compensation for his serv-
ices. As said in *Huntley* v. *Kingman*, 152 U. S. 527:
"The tendency of courts in modern times has been not
to hold instruments of this character fraudulent and
void upon their face, unless they contain provisions
plainly inconsistent with an honest purpose, or the
instrument indicates with reasonable certainty that it
was executed, not to secure *bona fide* creditors, but to
enable the debtor to continue to carry on his business
under cover of another's name."

In *Smith* v. *Craft*, 123 U. S. 436, a creditor received from his debtor a stock of goods in payment of debts, and the debtor executed to him a bill of sale therefor; and it was stipulated therein that the creditor would employ the debtor in the old business in which the goods were sold, at the rate of $150 per month, so long as the creditor should carry on the business. The court, in speaking of the validity of this stipulation, said: "If its object appeared on its face to have been to secure a benefit to the debtor or his family, it would be fraudulent in law. * * * But if its purpose was to obtain services necessary to wind up the business, and turn the goods into money as promptly and economically as possible, for the benefit of the other party, it is valid. *Wilcoxon* v. *Annesley*, 23 Ind. 285; *Baxter* v. *Wheeler*, 9 Pick. 21; *Strong* v. *Carrier*, 17 Conn. 319. As was well said by the Supreme Court of Indiana in *Wilcoxon* v. *Annesley*: 'Where, as in this case, the purchase was of a stock of goods in a store, and an established trade existing, it seems but reasonable that, at a fair salary, the grantor might be employed, for a time at least, to continue in charge of the business, and that circumstance will not in itself prove the transaction fraudulent.'"

In the deed of trust executed by the Blooms they were to "pay at the end of each week into the Lawrence County Bank the amount of sales for said week, after deducting *only* the necessary expenses of carrying on the sales, such as rent of building, clerk hire, and their *living* expenses," and to immediately apply the amount of sales deposited, through the bank, to the payment of the debts secured, in the order in which they may become due. Moneys received from the collection of outstanding indebtedness by the grantors, after deducting the expenses mentioned which were unpaid, were also to be applied at the end of each week in the same manner. They made their living expenses a part of the expense

of the business, and further stipulated "that the expenses of carrying on the business, until the before mentioned indebtedness shall be fully paid, shall be limited to the least practical sum, considering the successful management of the conveyed property." Their living expenses, which only included the cost of their food, raiment, shelter, and lodging, was a compensation for services to be rendered, and was the only reward to be received by them, and that was to be limited to the least sum practicable. And after this they provide that if they injure the security intended to be given, in any manner, by their neglect or mismanagement, then it shall be lawful for the trustee, on demand of the beneficiaries, to take possession of the goods and sell, and collect the accounts and evidences of debt; thereby limiting their right and opportunity to receive out of the property mortgaged anything more than the necessary expenses of living, reduced to the least sum practicable. We see in this no intent to pay anything more than a reasonable salary for selling the goods and closing up an old business, which they were presumably more competent to do than the trustee, or any one he might employ. There was no evidence to show that the services or compensation were unnecessary or unreasonable.

Entertaining the views expressed in *Smith* v. *Craft*, we hold the deed in question to be valid.

Judgment affirmed.