# THE SUPREME COURT

31 301
37a 278
31 301
107 119

OF

## THE STATE OF MISSOURI,

JANUARY TERM, 1861, AT JEFFERSON CITY.

———•◦•———

KEILER *et al.*, Defendants in Error, v. TUTT *et al.*, Plaintiffs in Error.

1. The difference between a sale and an assignment is, that in the former there is a fixed price and no trust, but in the latter there is a mere trust and of course no fixed value given to the property.
2. Where, in case of sale of merchandise, the goods are delivered and the purchaser took immediate possession, "the price and value of the goods to be ascertained by reference to the bills of purchase, and an inventory of said merchandise to be taken by the parties aforesaid;" *held,* that the delivery was complete and sufficient to vest in the purchaser the right of property.

*Error to Morgan Circuit Court.*

*Douglass & Hayden,* for plaintiffs in error.

Upon the record in this case the following questions arise :
1st. Is the instrument of writing purporting to be the agreement between Aaron, Jacobs & Co. and R. Keiler & Co. an absolute bill of sale, or an assignment in trust for the benefit

20—VOL. XXXI.

of creditors ?    2d. Can one partner make a general assign-
ment of the partnership effects for the benefit of creditors, so
as to bind his copartners and pass the title ?    3d. Was the
sale of the goods complete before the inventory thereof was
completed ?

I. Upon the first point: The distinction between an abso-
lute bill of sale and an assignment in trust for the benefit of
creditors, is well established.    Sales are transfers in the or-
dinary course of business, and usually upon a consideration
created or passing at the time, and actually paid or agreed
to be paid.    It is a complete transaction, passing all the ven-
dor's interest without reversion or return.    Sales are also
for the exclusive benefit of the immediate grantees.    On the
other hand, an assignment in trust is generally made upon a
preëxisting consideration, and to secure the performance of
a duty or the payment of a debt.    It is a transfer for a par-
ticular object, and the subject of the transfer is to be applied
to certain specified uses and purposes.    It is a continuing
transaction, to subsist until its specified purposes are accom-
plished, and its characteristic quality is, that after such pur-
poses have been accomplished, the unappropriated residue of
the property or its proceeds returns to the assignor.    Herein
an assignment in trust is distinguishable from an absolute
sale : in a sale the vendor parts with all his interest, but
in an assignment the assignor retains a contingent resulting
interest.    (Burrell on Assign. 29 and following ; Blank v.
German, 5 Watts & Serg. 36 ; United States v. McLellan,
3 Sumner, 352–7 ; Williamson et al. v. Berry, 8 How. 544 ;
Halcomb v. Ray, 1 Iredell, 340 ; Shaffer v. Watkins, 7 Watts
& Serg. 219 ; Parker v. Pattee, 4 N. H. 176.)

II. Upon the second point: If then the instrument of
transfer be an assignment in trust, the other question is pre-
sented, can one partner make a general assignment of the
partnership effects, for the benefit of creditors, so as to bind
his copartners and pass the title ?    The plaintiffs in error
contend that he can not.    The copartnership existing under
the firm name of Aaron, Jacobs & Co. was composed of

Abram Aaron, Bennett Aaron, Moses Aaron, and Israel Jacobs. The instrument of transfer is executed in the name of Aaron, Jacobs & Co., " by Abram Aaron." The other partners were in the country. The sheriff's return in the suit in Cooper county shows an actual service on some of them. However variant the decisions may be upon the power of one partner to make a general assignment of the partnership property, yet, in this state, the law is deemed to be settled by the case of Hughes v. Ellison, 5 Mo. 463, that one partner has no such power, and " thus far there is no American case which says that one partner, when the other members are present, may, without their consent, make a general assignment of the effects to a trustee for the benefit of creditors." (1 Am. Lead. Cas. 444.)

III. Upon the third point: It is contended by the plaintiffs in error that the transfer was not complete as long as any thing remained to be done by the parties. After the execution of the instrument of writing, in evidence, " the price and value of the goods were to be ascertained by reference to the bills of purchase and an inventory of said merchandise to be taken by the partners aforesaid." The inventory was thus to be the joint act of the parties, and until it was completed, the law is believed to be well settled that no present right of property attaches in the purchaser. (2 Kent, 495, 496, 502.) At the time of the levy in this case, the inventory was not completed. One-third of it remained to be taken. The taking of the key by Keiler did not amount to a delivery. It does not appear that the key had been delivered to him by any one authorized to make such delivery, nor that it was done with any intention of vesting the possession in him, nor that it was accepted by him with such intention. So far as appears from the record, he took the key without authority from any one. (2 Kent, 504.) This position is not in conflict with the decision of this court in the case of Cunningham v. Ashbrook, 20 Mo. 553. The property then, was still in the assignors and subject to the attachments.

*Ross, Sevier & Henderson*, for defendants in error.

I. It is believed the only point important to be considered by the court is, whether the transaction between Aaron, Jacobs & Co. and R. Keiler & Co. was a sale or an assignment. It is submitted that this question can be best determined by reference to the attending circumstances. There is no question as to the indebtedness of Aaron, Jacobs & Co. to R. Keiler & Co. in the several amounts stated. We think there is just as little doubt as to the intention of Aaron, Jacobs & Co. to sell and R. Keiler & Co. to buy the merchandise, horses and wagon. The horses and wagon were delivered, the key of the store was delivered. The parties proceeded to ascertain the value of the merchandise ; the price was fixed ; the only thing remaining to be done was the completion of the invoice of the merchandise. This was not necessary to pass the title to the property ; it was only necessary in order to ascertain the amount or entire value. The evidence shows a complete sale and delivery of the property independent of the writing of Keiler, and Keiler's title is just as good without as with the writing. The fact that defendants in error produced upon the trial the notes mentioned in the written agreement, is not evidence that they were not delivered to Aaron, Jacobs & Co. at the time of the purchase of the property. There is nothing in the evidence showing the custody from which they were obtained. The record shows that when these notes were demanded by plaintiffs in error, the defendants in error were not able to produce them. It can not be said that a party or his attorney is presumed to have had the previous custody of papers which he uses in the trial of his cause. But these notes might well remain in Keiler's possession until the inventory of the merchandise was complete, and this having been prevented by the levy of the attachment, Keiler might well retain them until the legal adjustment of the rights of the parties. It is conceded that one partner may sell the copartnership property. But treating the transaction as an assignment, we hold that a debtor may assign to a creditor property in payment of a debt. This is all that

was done in this case; but as the parties could not know whether the property sold would prove more than sufficient to pay Keiler & Co.'s debt, it was competent for the parties to say to whom the balance, if any, should be paid; and their having done so, neither creates a preference of one creditor over another, nor a trust for the benefit of Aaron, Jacobs & Co. (Burrell on Assignments, § 1 & 3.)

II. As to the power of one partner to sell or assign the copartnership property, see 1 Parson on Contr. p. 154, 155.

NAPTON, Judge, delivered the opinion of the court.

The proper construction of the transaction between Keiler & Co. and Aaron, Jacobs & Co. is the principal question in this case. That transaction was reduced to writing. The instrument, after reciting the indebtedness of Aaron, Jacobs & Co., which had been settled by notes and amounted to about sixteen hundred dollars, proceeds thus : " They (A. & Co.) have this day sold, transferred and delivered to said R. Keiler & Co., one pair of horses at and for the price and sum of two hundred and twenty-five dollars; one horse at seventy dollars, and two horses at forty dollars each, and one wagon at seventy-five dollars; also a stock of merchandise in store in the town of Versailles, Morgan county, Missouri, which merchandise is purchased and taken by said R. Keiler & Co. at thirty per cent. less than its cost in St. Louis; the price and value to be ascertained by reference to bills of purchase and an inventory of said merchandise to be taken by the partners aforesaid; and it is further agreed between the parties aforesaid, that if the merchandise so sold and delivered shall be more than sufficient to pay off and discharge the indebtedness, that said R. Keiler & Co. shall pay to Morris Plahto, of St. Louis, the indebtedness of said Aaron, Jacobs & Co. to said Plahto, being about the sum of eight hundred dollars, and account to said Aaron, Jacobs & Co. for any balance which may remain in their hands," &c.

The horses were delivered to Keiler immediately and the key of the store was also handed to him, and he was proceed-

ing, through a clerk employed by him, in taking an inventory of the goods, when the sheriff levied an attachment upon them. The question is, whether the transaction was a sale or an assignment, and this question is only important upon the assumption that an assignment executed by one partner of the entire effects of the partnership is void—a proposition which we do not think it necessary to examine, since it is our opinion that the transaction was clearly a sale.

The characteristics which distinguish a sale from a mere assignment are, that in the former there is a fixed price and no trust, in the latter there is a mere trust and of course no fixed value given to the property. Here the price was determined—the horses were taken by the creditor at a fixed price and the goods also. It is true, that the aggregate value of the merchandise was not settled, for the plain reason that it could not be, until an inventory was taken. But that is certain which can be rendered certain. When the inventory was made and the original bills were examined, the aggregate price was determined by the terms of the contract.

As to delivery, it is not perceived how it could have been more complete than it was. If a man sells another a hundred barrels of corn, at an agreed price, to be taken from a crib containing five hundred barrels, it might be contended that the corn is not delivered until the quantity purchased is separated from the bulk. But if the purchase embraces all the corn in the crib, the exact amount being unknown, it can not be pretended that the sale is incomplete until the corn is measured. In this case, the purchaser took immediate possession of the goods, with the consent of the vendor.

That part of the bill of sale which required the purchaser, in the event that the value of the goods and other property conveyed exceeded the amount of indebtedness, to pay over the balance to another creditor and the remainder, if any, to the debtor, is relied on as a circumstance to show a trust and thus convert the transaction into an assignment. But it was a mere mode of payment and really nothing more than an assumption in a certain contingency of one of the debtor's

liabilities and constituted a part of the price. There was no interest in the goods or their proceeds reserved to the grantor. The title to the goods passed absolutely to the vendee, at an agreed price, the full aggregate amount of which was as yet undetermined; and as the notes due the vendee might not absorb the entire price, an arrangement was made for the payment of whatever sum might exceed the amount of the indebtedness. It is the case of a man's buying property and paying for it partly in cash and partly by assuming a debt due by his vendor to another. The latter circumstance does not make the transaction a trust, or deprive it of the essential features of a sale.

The main question in this case, it is evident, was whether the debts of Keiler & Co. were genuine, and whether the prices of the property delivered were fair and reasonable. If the debts were *bona fide* and the property taken at a fair value, it is not easy to see how any fraud could have existed, so long as the law allows a debtor to prefer one creditor and pay his demand either in money or property. Such transactions are necessarily obstructions to other creditors, where the debtor's property is insufficient to pay all his debts. But we might as well attack the attaching creditor on this ground, who, if successful, would sweep off all the property, and thereby totally defeat the claims of others, as the creditor who effects the same purpose by a voluntary transfer or sale. Each is looking to his own interest, regardless of any division on equitable principles, and the course of each is alike prejudicial to the satisfaction of the other's claim. But as the law stands, these scrambles are tolerated, and the party who is most vigilant and active is permitted to retain the spoils. The mere fact that other creditors are obstructed or defeated does not vitiate the transaction, for such is the usual effect of all such struggles for the property of a debtor in failing circumstances, whether by attachment or by sales.

The question as to the *bona fides* of this transaction was put to the jury under instructions, some of which were too favorable to the attaching creditors. The facts showed that

the property was taken at a fair price, since the result of the sale only amounted to about one thousand two hundred dollars, when the estimated value at thirty per cent. below cost made them one thousand seven hundred dollars. The property failed to pay the notes to Keiler & Co.

Judgment affirmed; Judge Ewing concurs. Judge Scott absent.