*B. K. Elliott,* for appellant.

*D. McDonald* and *A. G. Porter,* for appellee.

———————•———————

24 395
130 312
130 543

## KEEN and Others *v.* PRESTON and Others.

SALE TO PAY DEBTS.—A sale absolute in its terms, for the satisfaction of a debt, is not void under the act concerning voluntary assignments, (1 G. & H. 114,) merely because an excess in value of the property, over the amount of the debt, was to be returned to the debtor.

VOLUNTARY ASSIGNMENTS.—The act concerning voluntary assignments (1 G. & H. 114,) does not apply to a transfer of property made by a debtor not in embarrassed or failing circumstances.

CONTRACTS, WHETHER ENTIRE OR DIVISIBLE.—Whether a sale of chattels in part satisfaction of a debt, and a transfer of notes, at the same time, as collateral security for the same debt, constitute separate transactions, or but one, is a question for the jury.

SAME.—Though the sale of the chattels and the transfer of the notes were in execution of one agreement, the transactions were nevertheless separable, and, hence, if the transfer of the notes was fraudulent, it could not contaminate the sale, if *bona fide,* of the chattels.

SALE.—JURY.—Whether a sale is honest, or not, is a question for the jury.

SALE ON EXECUTION.—INSUFFICIENT NOTICE.—A sale of personal property on execution, to the execution creditor, on a notice of but nine days of the time and place of sale, is void.

SALE.—EXECUTION.—A sold to B a certain number of staves, and having delivered part, failed to deliver the rest.

*Held,* that those delivered were not, on account of the non-delivery of the rest, subject to execution as the property of A.

APPEAL from the *Vanderburgh* Common Pleas.

FRAZER, · J. — This was replevin to recover a quantity of staves. Two defenses were pleaded. 1. General denial. 2. Property in the defendants. There was a jury trial, a verdict for the defendants, and a judgment thereon over a motion for a new trial. The plaintiffs appeal.

The evidence is in the record, and discloses that one *Hawkins*, a retail merchant, being indebted to the plaintiffs in about the sum of $2,300, on the 27th of *January*, 1861, executed to them an absolute bill of sale of his stock of store·goods, and the staves in question. Immediate possession was taken of the goods by the plaintiffs. The quantity of staves was not definitely known, but was estimated in the invoice at forty thousand, "more or less," and the price was to be $7 per thousand. Before the 1st of *June*, the staves in question, being 22,359, and only a part of those invoiced, were counted, piled, and taken possession of by the plaintiffs. The balance of the staves never were delivered, and some of them were not fully manufactured when the bill of sale was executed. The goods and forty thousand staves amounted to $1255 23. *Hawkins* also delivered to the plaintiffs, at or about the same time, as collateral security, notes and accounts amounting to about $2,000. He had other property remaining, which considerably exceeded in value all his other indebtedness. The defendants, in *April* of the same year, obtained a judgment against *Hawkins* for his entire indebtedness to them, $239 86, upon which execution issued on the 1st of *July* following. It was levied on the staves in controversy, and, upon nine days' notice thereof, the defendants became the purchasers of the staves at sheriff's sale, with full knowledge that the plaintiffs claimed to own them, and were in possession of them. After the sale by the sheriff, the defendants took possession, and shipped them from *Sullivan* county to *Evansville*, and there this suit was brought. The plaintiffs always admitted that the collaterals would pay the residue of their claim, and leave a balance for

*Hawkins,* and indeed they returned a portion thereof to him. They were his largest creditors; he owed them more than all others. The defendants contended below that the transaction between *Hawkins* and the plaintiffs was an assignment for the benefit of creditors, and, therefore, void under the act concerning voluntary assignments, (1 G. & H. 114,) and the court refused several instructions to the jury, asked by the plaintiffs, laying down the law to be that if any surplus was to be returned to *Hawkins,* or applied on his other debts, that fact would not make void, under that act, what was otherwise an absolute sale. This was error. We had occasion to consider one aspect of this question in *Wilcoxon* v. *Annesley,* 23 Ind. 285. But in the case now before us, there was not sufficient evidence that *Hawkins* was in embarrassed or failing circumstances; and without that element in the case, the act concerning voluntary assignments could have no application to it whatever. Other instructions given assume the law to be the exact contrary of what was thus asked by the plaintiffs. That they were erroneous is so clear that the appellees do not attempt to sustain them in argument here.

Whether the sale of the personal property and the transfer of the collaterals were parts of the same transaction, or separate transactions, was, if a question at all, for the jury to decide upon the evidence. The court, however, took that question from the jury, by instructions which assumed that the whole constituted one transaction, and thus mingling them, assumed the law to be that if either was void, the whole was void. This was also error. The two things, even if both were done in execution of one agreement, were nevertheless separable, and a fraudulent transfer of the collaterals could not contaminate a *bona fide* sale of personal property; and whether such sale was an honest transaction was a question for the jury, which the court also improperly withdrew from their consideration. The evidence was of such a character that this question arose upon it, inasmuch as there was some

evidence tending to show that the whole arrangement was designed by both parties to delay other creditors.

The following instruction, asked by the plaintiffs, was refused:

"If the jury believe, from the testimony, that the staves in controversy were purchased by the defendants at sheriff's sale, after only nine days' notice of said sale had been given by the sheriff, then they are chargeable with notice of such fact, and such sale could confer no title on the defendants." Surely this ought to have been given. The purchasers were plaintiffs in the execution, and chargeable with notice of the irregularity. This is a familiar doctrine of the law, and it was applicable to the case as made by the evidence.

Of the whole quantity of staves included in the bill of sale, only those in controversy had ever been delivered by *Hawkins* to the plaintiffs. We suppose it to be very clear that a failure to deliver a part could, alone, constitute no sufficient legal objection to the plaintiff's title to those which had been delivered. But as we understand the third instruction given to the jury at the request of the defendants, it means that if forty thousand staves were not delivered by *Hawkins* to the plaintiffs, then those in controversy, though as to them no act remained to be done by either party to put the plaintiffs in possession of them, would not, in law, be deemed delivered, and were, therefore, the property of *Hawkins*. We think that this did not express the law. *Moffatt* v. *Green*, 9 Ind. 198.

The appellees insist that the verdict and judgment below were so clearly right upon the evidence, that there ought to be an affirmance, notwithstanding the errors already mentioned. This is the second time this case has appeared here, (18 Ind. 67,) and as the amount in controversy is not large, we should be reluctant to protract the litigation. We have accordingly examined the evidence with care, and, without embarrassing either party by expressing any opinion as to its preponderance, we perceive that it is not of a character to justify an affirmance as urged. It is

contradictory upon vital points, and necessarily involves the veracity of witnesses in its determination.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*C. Baker* and *C. E. Marsh,* for appellants.

*J. E. Blythe* and *M. S. Johnson,* for appellees.

