BECKER v. RARDIN, *Appellant.*

DIVISION TWO.

1.  **Bill of Sale:** ASSIGNMENT FOR BENEFIT OF CREDITORS. A bill of sale is distinguished from an assignment for the benefit of creditors in that in the former there is a fixed price and no trust, while in the latter there is a mere trust and no fixed value given to the property.

2.  ———:———. The price is, however, certain if it is capable of being rendered certain.

3.  ———:———. The fact that the bill of sale provides that, if the value of the property transferred shall exceed the indebtedness required in it to be paid by the vendee, the surplus shall be paid over to other creditors does not make it an assignment.

*Appeal from Worth Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

REVERSED AND REMANDED.

*John M. Wood* for appellant.

(1)   A debtor may prefer one creditor to another. He may sell, mortgage or pledge the whole or any part of his property for the benefit of one or more of his creditors to the exclusion of all others, and if the transfer is *bona fide* it will be sustained.   Insolvency does not deprive him of the right to make a preference. *Hargadine v. Henderson,* 97 Mo. 375 ; *Foster v. Planing Mill Co.,* 92 Mo. 79 ; *Hard v. Foster,* 98 Mo. 297 ; *Daugherty v. Cooper,* 77 Mo. 528 ; *Ames v. Gilmore,* 59 Mo. 537 ; *Shelley v. Boothe,* 73 Mo. 74 ; *Henderson v. Henderson,* 55 Mo. 534 ; *In re Assignment of Zwang,* 39 Mo. App. 356.   (2)   The assignment law of Missouri does not limit or affect the right of an insolvent debtor to sell or mortgage a part or all of his property to one or more of his creditors in payment or security for a particular debt or debts.   *Hargadine v. Henderson,* 97 Mo. 375 ; *Lampson v. Arnold,* 19 Iowa, 479 ; *Gilbert v. McCorkle,* 8 W. Rep. 911 ; *Waterman v. Silberberg,* 67 Tex. 100 ; *Rolins v. Van Baalen,* 56 Mich. 610 ; *Farwell v. Howard,* 26 Iowa, 381 ; *Gage v. Perry,* 24 Cent. L. J. 10, and note.   "The assignment law of Missouri is not in letter or spirit a bankrupt or insolvent debtor's act."   *Hargadine v. Henderson,* 97 Mo. 375 ; *Zwang Case, supra.*   (3)   The provisions of section 424, Revised Statutes, 1889, refer to preferences attempted to be given in assignments made under that statute.   Preferences are prohibited only where the party executes "an assignment for the benefit of creditors," in which he undertakes to avail himself of the provisions of the statute in reference to assignments.   The instrument under which appellant claims

does not purport to be an assignment. *Waterman v. Silberberg*, 67 Tex. 100; *Manny v. Logan*, 31 Mo. 91; *Shapleigh v. Baird*, 26 Mo. 322; *Edwards v. Dickson*, 2 S. W. Rep. 718; *Stiles v. Hill*, 62 Tex. 429; *Labelle v. Tidball*, 59 Tex. 291; *Jackson v. Harby*, 65 Tex. 714; *Brown v. Guthrie*, 110 N. Y. 435; *Nicholson v. Lyon*, 14 N. Y. St. Rep. 549; *Gage v. Perry*, 24 Cent. L. J. 10. See other authorities cited in the preceding paragraph. (4) The contract or instrument in writing under which the appellant claims, whether it be called a bill of sale, mortgage, or instrument in writing in the nature of a mortgage, or by any other name, must "be interpreted and carried into effect according to the intent of the contracting parties, as such intent appears in the instrument." * * * "Where the instrument is intended as a security for the payment of honest debts, it will be enforced according to its terms." *Gilbert v. McCorkle*, 8 W. Rep. 911; *Waterman v. Silberberg*, 67 Tex. 100; *Hargadine v. Henderson*, 97 Mo. 375; *Gage v. Perry*, 24 Cent. L. J. 10; *Aulman v. Aulman*, 32 N. W. Rep, 240. (5) It was the intention, as appears from the writing itself, of both parties to it, to sell and transfer the property to appellant to pay the debt due him and to protect and secure him on the notes on which he was surety. If it be considered that it was only intended as a security for a debt, then it may be treated as a mortgage, or in the nature of a mortgage. *Schradski v. Albright*, 93 Mo. 42. (6) The word "assignment" has a peculiar and appropriate or technical meaning in the law, and was used in that meaning in the statute. The statute does not declare a general transfer invalid, but relates to general assignments, and uses the latter word in its technical sense. *Cowles & Co. v. Ricketts*, 1 Iowa, 582; *Lampson v. Arnold*, 19 Iowa, 479. (7) Even if the writing should be construed to be an assignment, the judgment should be reversed, for the reason that the statute only forbids a preference of one or more over

others named in the instrument. This the writing does not do. *Shapleigh v. Baird*, 26 Mo. 322 ; *Crow v. Beardsley*, 68 Mo. 435 ; *Manny v. Logan*, 31 Mo. 91 ; *Johnson v. McAllister*, 30 Mo. 327.

*McCullough & Peery*, R. L. Whaley, Lucas & Harrigan and W. J. Gibson for respondent.

(1) An assignment for the benefit of creditors is an absolute appropriation of the debtor's property in trust to pay all or certain named of his creditors. Burrell on Assignments [2 Ed.] secs. 2, 3, and notes ; *Crow v. Beardsley*, 68 Mo. 435 ; *State v. Benoist*, 37 Mo. 500 ; *Shapleigh v. Baird*, 26 Mo. 322. (2) The instrument to be construed in this case is in express terms an assignment for the benefit of the creditors. It conveys all of the debtor's property, and provides that after certain debts are paid the remainder shall be paid "to E. Miller for benefit of other creditors not herein named." This constitutes it an assignment for benefit of all the creditors of W. D. Rardin, whether named or not. R. S., sec. 424 ; *Crow v. Beardsley*, 68 Mo. 438 ; *State v. Benoist*, 37 Mo. 500 ; *Manny v. Logan*, 27 Mo. 528 ; *Shapleigh v. Baird*, 26 Mo. 322 ; *Douglass v. Cissna*, 17 Mo. App. 44 ; *Jeffries v. Bleckman*, 86 Mo. 350 ; *Sampson v. Show*, 19 Mo. App. 274 ; *Manny v. Logan*, 31 Mo. 91 ; *Mills v. Williams*, 31 Mo. App. 447 ; *Page v. Smith*, 24 Wis. 371 ; *Norton v. Kearney*, 10 Wis. 443 ; *Lord v. Devendorff*, 54 Wis. 491. (3) The respondent does not dispute the doctrine that a debtor in failing circumstances may prefer one or more creditors to the exclusion of others, but we do assert that where an instrument is on its face an assignment, creates a trust for other creditors than those named, and actually names a trustee, a preference in such instrument is void, and the transfer inures to the benefit of all the creditors. Hence the recent case of *Hargadine v. Henderson*, 97 Mo. 375, has no application to an instrument like the one in

question here, for the conveyance in that case contained no such provision as we find here. *Page v. Smith,* 24 Wis. 368.

GANTT, P. J.—This is an action begun in the circuit court of Worth county by the plaintiff, who was one of the creditors of William D. Rardin, against the defendant, in which it is charged that, by virtue of a certain conveyance made by William D. Rardin to the defendant, said defendant became the assignee of the goods, wares and merchandise conveyed, for the benefit of all the creditors of said William D. Rardin ; that, although he was by virtue of said instrument such assignee, he had failed to file his bond as such, and had failed to file inventories of the stock as required by the statute in such instances and concluded with a prayer for an order to show cause why he should not be removed for failure to comply with the law and for all proper relief.

The defendant answered, denying that the conveyance which he had taken to the property was an assignment and that he was assignee, and avers that he actually purchased the property outright and agreed to pay certain debts of said William D. Rardin, as the consideration therefor. The cause was tried at the November term, 1888.

The following is all the evidence : The defendant offered in evidence : *First.* The contract between defendant and Wm. D. Rardin, which is in words and figures as follows, to-wit :

" This contract, made and entered into this first day of September, 1888, by and between Wm. D. Rardin, of Denver, Worth county, Missouri, party of the first part, and C. L. Rardin, of Gentry county, Missouri, party of the second part, witnesseth that the said party of the first part has this day sold and transferred to the said party of the second part his stock of merchandise in Denver, Worth county, Missouri, consisting of dry-goods, notions, clothing, hats, caps, boots,

shoes, groceries, queensware and all other articles on hand in said store,—the party of the second part to take said merchandise at its cost value; that is to say, all goods that are new and not soiled, to be invoiced at first cost; all goods that are old, shelf-worn or in any way damaged, to be invoiced at their present cash value. It is further agreed and understood that, if the said parties to this contract cannot agree as to the value of any portion of the merchandise. so sold, they shall .call to their assistance some practical merchant of the town of Denver to fix the value thereof, and whose decision shall be final—the said party of the first part to receive payment for said stock of merchandise as follows, to-wit :  .The said party of the second part to cancel and surrender to him, the party of the first part, four certain notes, held by him against the said first party, amounting to $3,994.17, and shall pay off and discharge the following items of indebtedness of him, the first party, to-wit:   Three notes to F. M. Magee, amounting to $531.67 ;  two notes to W. C. Chapman, amounting to $447.; one note to J. P. Morrison, for $213.33 ; one note to Mrs. Isaac Dillon, amounting to $1,050 ; one note to P. H. Bush, amounting to $210; one note to Phelps, Dodge & Palmer, for $379 ; one note to Citizens' Bank, for $331 ;  to P. H. Bush, $300 for services as clerk in store.

"The said party of the second part hereby agrees, in consideration of and for the stock of goods, wares and merchandise so sold to him as aforesaid by the said party of the first part, to accept the same upon the terms hereinbefore mentioned, and to pay for them in the manner hereintofore stipulated, to-wit:   To cancel and surrender to the said party of the first part the four promissory notes held by him against the said first party, amounting to $3,994.17, and as further payment upon said stock of merchandise to pay for said first party :   To F. M. Magee, $531.67 ; to W. C. Chapman, $447 ; to J. P. Morrison, $213.33 ; to Mrs. Isaac Dillon,

$1,050; to P. H. Bush, $510; to Phelps, Dodge & Palmer, $379; to Citizens' Bank, $331.

"It is further agreed that the invoice of said stock of merchandise shall be made as soon as practicable, and in case the stock of goods fails to invoice a sum sufficient to cover the amount of indebtedness, to-wit, $7,636.17, then in such case the said second party shall have the right to have and select good and solvent accounts due to said party of the first part from his customers to an amount equal to the difference between the said invoice price and the amount agreed to be surrendered and paid as aforesaid, and, for the purpose of selecting said accounts, the said party of the second part shall be entitled to have possession of the books of accounts of said first party. It is further agreed that in case the goods, wares and merchandise invoice to a greater amount than $7,636.17, the difference over and above that amount to be paid to E. Miller, for the benefit of other creditors not herein named.

"Witness our hands and seals, this first day of September, 1888.

"WILLIAM D. RARDIN [ Seal ].
"C. L. RARDIN          [ Seal ]."

Also offered as a witness the defendant, Courtland L. Rardin, to prove the understanding and intention of the parties to said contract, as to how they construed it, and what they intended and understood it to mean when they signed it, and that in pursuance of the contract defendant took said stock of goods in payment of his own debt and the debts for which he was held as security. And further ordered said witness to prove that, in further compliance of said contract and sale, he had invoiced said stock of goods and taken charge thereof and delivered to said William D. Rardin the obligations and note he held against him, and had also paid and discharged a large portion of the security debts for which he, the said defendant, was liable and had assumed to pay by the said contract as a part of

the purchase money for said goods.   To all of which, except the written contract, plaintiff objected, and the court, after considering said objection, sustained the same, and excluded the testimony, to which said action of the court the defendant at the time excepted.

It was then expressly admitted by the plaintiff that the said Wm. D. Rardin was, on the first day of September, 1888, indebted to defendant in the sum of $3,994.17, and that on said date defendant was also liable and held security for the said Wm. D. Rardin, to the persons mentioned in said contract for the sum of $3,662.20.   This was all the evidence in the case.

The circuit court construed the conveyance from Wm. D. Rardin to his father, C. L. Rardin, to be an assignment for the benefit of creditors and found the issues for plaintiff and ordered the defendant to file a bond as assignee with good and sufficient securities in the sum of $11,000 within five days and to file his inventory of the assigned property in fifteen days, and that, failing so to do, he would be dismissed from said trust.   Defendant thereupon filed his motions for new trial and in arrest which were overruled, and he appealed to this court.

The defendant assigns as error that the circuit court erred in holding that the transfer of the property shown in this case constituted an assignment for the benefit of creditors and in requiring him to file a bond and inventory.

Was it an assignment for the benefit of creditors within the meaning of Revised Statutes, 1889 ?   Section 424 provides: "Every voluntary assignment of lands, tenements, goods, chattels, effects and credits made by a debtor to any person in trust for his creditors shall be for the benefit of all the creditors of the assignor in proportion to their respective claims ; and every provision in any assignment providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities (including judgments

entered by confession thirty days previous to such assignment ) shall be paid *pro rata* from the assets thereof, and every such assignment shall be proved or acknowledged and certified and recorded in the same manner as is prescribed by law in cases wherein real estate is conveyed." Laws, 1885, p. 30.

If plaintiff's contention is correct, he is entitled to share *pro rata* with all the creditors of W. D. Rardin, and he has pursued the course which this court indicated as correct in *Crow v. Beardsley*, 68 Mo. 435, and in *Sexton v. Anderson*, 95 Mo. 373, viz., by "compelling the trustee to discharge his duties under the assignment law."

It will be observed there is no evidence or charge of fraud in the case. The sole question is the proper construction of the instrument in evidence. "The characteristics which distinguish a sale from an assignment are that in the former there is a fixed price and no trust, in the latter there is a mere trust and of course no fixed value given to the property." *Keiler v. Tutt*, 31 Mo. 301; Burrill on Assignment [ 4 Ed.] sec. 4. Here the price was fixed, that is to say, the goods were to be taken at their cost value; "that is to say, all goods that are new and not soiled, to be invoiced at first cost, all goods that are old, shelf-worn or in any way damaged, to be invoiced at their present cash value," and if vendor and vendee should differ as to the value of any of the merchandise so sold, "they shall call to their assistance some practical merchant of the town of Denver to fix the value thereof, and his decision should be final."

As was said by NAPTON, J., in *Keiler v. Tutt, supra :* "It is true the aggregate value of the merchandise was not settled for the reason that it could not be until an inventory was taken." "But that is certain which can be rendered certain." As to the delivery no question was made in this case, and, if it had been material, the defendant offered to show "that he had

invoiced the stock of goods and taken charge thereof, and had delivered to said William D. Rardin the obligations and notes he held against him and had also paid and discharged a large portion of the security debts for which defendant was liable and had assumed to pay by the said contract as part of the purchase money."

The only remaining contention of the plaintiff below is that because the bill of sale, after stipulating that defendant should pay certain specific debts for his vendor, provides: "It is further agreed that, in case the goods, wares and merchandise invoice to a greater amount than $7,636.17, the difference over and above that amount to be paid to E. Miller, for the benefit of other creditors not herein named," it became by force of this language an assignment for the benefit of all the creditors of the vendor.

In *Keiler v. Tutt*, the provision in the bill of sale was that "if the merchandise so sold and delivered shall be more than sufficient to pay off and discharge the indebtedness, that said R. Keiler & Co. shall pay to Morris Plahto of St. Louis the indebtedness of said Aaron Jacobs & Co., to said Plahto, being about $800 and account to Aaron Jacobs & Co. for any balance which may remain in their hands," etc. Judge NAPTON in regard to the provision said, " that part of the bill of sale which required the purchaser, in the event that the value of the goods and other property conveyed exceeded the amount of indebtedness, to pay over the balance to another creditor, and the remainder, if any, to the debtor, is relied on as a circumstance to show a trust and thus convert the transaction into an assignment." " But it was a mere mode or payment, and really nothing more than an assumption in a certain contingency of one of the debtor's liabilities and constituted a part of the price." " There was no interest in the goods or their proceeds reserved to the grantor." ' The title of the goods passed absolutely to the vendee

at an agreed price, the full aggregate amount of which was as yet undetermined, and, as the notes due the vendee might not absorb the entire price, an arrangement was made for the payment of whatever sum might exceed the amount of the indebtedness."

"It is the case of a man buying property and paying for it partly in cash and partly by assuming a debt due by his vendor to another." "The latter circumstance does not make the transaction a trust or deprive it of the essential features of a sale."

That case is similar in all essentials to this and has never been questioned by any decision in this court. Moreover it is abundantly supported by the decisions of other eminent courts. *Otis v. Maguire*, 67 Ala. 295; *Hawkins v. Bailey*, 48 Ala. 377; *Claflin v. McLaughlin*, 65 Penn. St. 64; *Johnson v. McGraw*, 11 Iowa, 151; *Keene v. Preston*, 24 Ind. 395; *Wilcoxon v. Armsley*, 23 Ind. 285; *Beans v. Bullitt*, 57 Penn. St. 221; Burrill on Assignments [ 4 Ed. ] sec. 4.

It follows the circuit court erred in holding the instrument was a voluntary assignment for the benefit of creditors. As this was all there was in the case; the cause is reversed with directions to dismiss the proceedings. Judgment reversed. All concur.