SMITH-McCORD DRY GOODS COMPANY v. GEORGE B. CARSON *et al.*

**No. 10581.**

ASSIGNMENT FOR BENEFIT OF CREDITORS—*instrument in form a sale to creditor in consideration of an absolute promise to pay other specified creditors, with stipulation for lien in their favor and distribution of proceeds to them pro rata, held not an.* Plaintiffs brought this action to have a certain written instrument declared an assignment for the benefit of creditors and executed as such. The substance of the writing is that C sells, to M. E. & M. a stock of merchandise, in consideration of which M. E. & M. agree to pay certain debts owing by C to creditors named and to sell the goods as rapidly as possible and apply the net proceeds *pro rata* to the extinguishment of the debts mentioned. It also provides that the agreement shall constitute a lien on the property sold, to secure the payment of the debts mentioned, and was signed by all the parties to it. *Held,* that the instrument does not amount in law to a statutory assignment for the benefit of creditors, but should be given effect in accordance with the ordinary signification of the language employed.

Error from Lyon District Court. W. A. Randolph, Judge. Opinion filed April 9, 1898. *Affirmed.*

The plaintiff in error brought suit in the District Court of Chase County against the defendants in error, alleging that, while insolvent, the defendant George B. Carson, a merchant at Cottonwood Falls, executed an instrument in writing of which the following is a copy :

" This agreement, made this 6th day of June, 1895, by and between Geo. B. Carson, party of the first part, and W. A. Morgan, R. B. Evans and John McCaskill, parties of the second part, witnesseth ·

" That for and in consideration of the covenants and agreements hereinafter set forth, the said Geo. B. Carson has this day sold, transferred and delivered to the parties of the second part all the goods, wares and merchandise, fixtures and furniture (including one Springfield gas machine) kept and used in a certain

store building belonging to Mrs. L. E. Peringo, situated on Broadway, in Cottonwood Falls, in Chase County, Kansas, including all the stock of merchandise now therein, and all furniture and fixtures kept or used therein in connection with the store, and all book accounts, notes, claims and rights in action belonging to said Geo. B. Carson; to have and to hold the same to the said parties of the second part, their heirs and assigns absolutely forever.

"These said parties of the second part jointly and severally agree in consideration of such sale and delivery to pay off and discharge certain obligations of said Geo. B. Carson, to wit: To W. J. McNee and Agnes McNee, Executrix of Jas. McNee, deceased, $2,000, with interest at ten per cent from 5–8, 1895; to John V. Farwell & Co., a corporation, of Chicago, Illinois, $2,184.93, with interest from date due; to R. B. Evans, $200, due October, 1895, with interest from 4–1, 1895, at eight per cent per annum, and the further sum of $500, due 5–3, 1896, with interest from 5–3, 1895, at eight per cent per annum; to Graves, Lambert & Dickson, an amount due them as attorneys' fees and from said Geo. B. Carson. Said parties of the second part further agree to sell said goods as rapidly as possible, in the usual course of business, and that as fast as they are disposed of, the net proceeds thereof shall be applied *pro rata* to the extinguishment of the debts mentioned; and this, the agreement of the said parties of the second part, shall be and constitute a lien on the property this day sold and delivered to them to secure the payment of the above mentioned debts.

"In witness whereof, we have hereto set our hands in duplicate the day and year first above written.

Geo. B. Carson,
*Party of the first part.*

W. A. Morgan,
Robt. B. Evans,
John McCaskill,
*Parties of the second part.*"

It was alleged in the petition that, at the time of the execution of this instrument, Carson was indebted

to the plaintiff in a sum exceeding $2200 ; that he owed to various creditors more than $8500, and that the property described in the instrument above copied was substantially all the property he had liable to be taken on execution for the payment of his debts ; that the parties named in the instrument, Morgan, Evans and McCaskill, had taken possession of the property and proceeded to convert it into money for their own use.   As a conclusion, it was alleged that the instrument was in legal effect an assignment for the benefit of creditors.   The petition prayed that a receiver should be appointed and that the property transferred should be administered for the benefit of all the creditors of Carson, *pro rata*, as in case of an assignment. Subsequently, the defendants Morgan, Evans and McCaskill, were appointed receivers to take charge of the property and sell it, but without prejudice to the rights of either party to the action.   By consent of all the parties the case was removed from Chase to Lyon County.   The case being put on trial, the defendants objected to the introduction of any testimony, on the ground that the petition failed to state a cause of action.   This objection was sustained, and the court thereupon entered judgment on the pleadings in favor of the defendants, and set aside the order appointing receivers.   Error is predicated of this action of the court.

*Ellis, Reed, Cook & Ellis,* for plaintiff in error.

*Graves & Dickson, I. E. Lambert,* and *Johnson Bros.,* for defendant in error.

ALLEN, J.   What is the legal import of the instrument above copied ?   This is the only question in the case.   There is an averment in the petition charging that all demands mentioned in the schedule, except that of John V. Farwell & Co., were fraudulent, fictitious,

feigned and void, but, as the plaintiff claims under the instrument itself, this averment is immaterial. The plaintiff cannot at the same time attack the transfer for fraud and claim rights under it. Unless the transfer was valid, the plaintiff's action necessarily fails. Counsel for the plaintiff in error, however, make no claim on the charge of fraud, but rest the case solely on the proposition that the instrument executed by Carson is, in legal effect, an assignment for the benefit of his creditors. It is contended that it is an absolute transfer of substantially all the debtor's non-exempt properties to trustees, to be by them sold and the proceeds applied to the payment of the creditors named in the instrument ; that the instrument is valid as a transfer of the property to trustees, but that it is invalid for the purpose of creating preferences ; that the law intervenes and avoids the preferences, and compels a distribution of the property equally among all the creditors. The claim of the defendant in error is that the instrument evidences an absolute sale from Carson to Morgan, Evans and McCaskill, and an assumption by them of the payment of certain debts of Carson as the consideration paid for the property.

Section 1, ch. 111 of the General Statutes of 1897 provides — "Every voluntary assignment of lands, tenements, goods, chattels, effects and credits, made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims." Under this statutory provision the test is whether the instrument under consideration assigned the property to any person in trust for the creditors. It has been held in some cases that instruments in the form of mortgages were, in legal effect, assignments for the benefit of creditors. *Harkrader v. Leiby*, 4 Ohio St. 602. In *Brigham v. Jones* (48 Kan. 162, 30 Pac. 113),

an instrument was under consideration by the terms of which Jones & Everett, who were insolvent debtors, assigned their property to D. W. Eastman, as trustee for and on behalf of certain creditors named, with directions to take possession of the property, sell it, and apply the proceeds to the payment of the creditors named in the assignment, and return the surplus if any, to the assignors. The contention on one side was that the instrument was a mortgage ; on the other that it was a general assignment. The court concluded that it was an assignment, not a mortgage.

It is a matter of no little difficulty to furnish tests, by which it can safely and readily be determined whether a particular instrument is an assignment for the benefit of creditors, a mortgage, or a bill of sale of the property. The essential elements of an assignment are that there shall be an absolute transfer of the property of the debtor to another in trust for the payment of creditors, with either an express or implied provision that the surplus, if any, shall be returned to the assignor. 3 Am. & Eng. Encyc. Law (2d ed.), 8 and 9. A mortgage is a transfer of the property of the debtor as security for the payment of one or more obligations, with a condition expressed or implied that on payment of the debt the title reverts to the mortgagor. A sale is, of course, an absolute transfer of the property to the vendee. Much of the language used in an instrument belonging to one of these classes will also be found in the others. No set form of words is indispensable to either. All contain words importing a sale or transfer of the title to the property. It is not indispensable to the creation of a trust that the word trust be used, nor is it indispensable to a mortgage that the word mortgage be used, or that there be a formal defeasance clause. The court must determine in each in-

stance the real intent of the parties and give effect to it so far as it is lawful. It may be that, in view of the more equitable results following assignments for the benefit of creditors, the court should, in all cases of doubt, incline toward that construction of a transfer of property made by an insolvent debtor which will give it effect as an assignment; but in this State it is well settled that an insolvent debtor may pay or secure one or more creditors in preference to others, by a direct application of his property to the discharge of his obligations or by mortgage for the same purpose, even though it results in leaving nothing for the others. *Avery v. Eastes*, 18 Kan. 505; *Arn v. Hoersman*, 26 id. 413; *Randall v. Shaw*, 28 id. 419; *Tootle v. Coldwell*, 30 id. 125, 1 Pac. 329; *Bishop v. Jones*, 28 id. 680; *Bliss v. Couch*, 46 id. 400, 26 Pac. 706; *Clement v. Hartzell*, 57 id. 482, 46 Pac. 961.

Proceeding now to examine the instrument under consideration in this case, we find that it is in terms an absolute sale and transfer, by George B. Carson to W. A. Morgan, R. B. Evans, and John McCaskill, of a stock of merchandise. In consideration of this sale, the vendees jointly and severally agree to pay off and discharge certain obligations of Carson, the amounts of which, except one, are stated. Then follows a covenant by the vendees to sell the goods as rapidly as possible, in the usual course of business, and apply the net proceeds *pro rata* to the extinguishment of the debts named. It is then provided that the contract shall constitute a lien on the property to secure the payment of the debts mentioned. The contract is signed by the vendor and all the vendees. Assuming that the contract is valid in all its parts, it amounts to this: *First*, an absolute sale of the goods; *second*, an agreement on the part of the purchasers to pay a fixed price therefor, but to pay it to creditors of the

vendor; *third,* the creation of a lien on the property transferred, in favor of the creditors, to secure the payment of their claims. In the case of *Becker v. Rardin,* 107 Mo. 111, it was held —

"A bill of sale is distinguished from an assignment for the benefit of creditors in that in the former there is a fixed price and no trust, while in the latter there is a mere trust and no fixed value given to the property. The price is, however, certain if it is capable of being rendered certain."

Applying this test, we find that this instrument has all the elements of a bill of sale. The only part of the consideration which is not expressed in plain terms is the amount due Graves, Lambert & Dickson, as attorneys' fees, which is, of course, capable of ascertainment. In the case of *Davis v. Schwartz,* 155 U. S. 631, it was said —

"It is sometimes difficult to determine whether a particular instrument is a mortgage or an assignment with preferences.. The test most frequently applied is whether the conveyance is of all the property of the debtor, and is made to a trustee for the benefit of certain creditors. In such cases it is usually held to be an assignment, but if the conveyance be made directly to the creditor, it is ordinarily treated as a chattel mortgage. Jones on Chattel Mortgages, § 352a; Burrill on Assignments, p. 11."

Without accepting this as a satisfactory test to be applied in all cases where the question whether an instrument is an assignment or a chattel mortgage is to be determined, it is certainly worthy of some consideration. In this case, the transfer was to three persons, one of whom was a creditor. The other creditors were not parties to the instrument, and the other parties to the instrument, so far as appears from it, were not creditors. Under an ordinary assignment, the assignee assumes no personal liability beyond that

devolving on him in the execution of the trust. He is not bound to answer out of his own estate for any deficiency necessary to the payment in full of the creditors. This contract is a full assumption of the debts named, and renders the vendees personally liable to the creditors for the full amount of their respective claims. It is true that in the case of *Bloom v. Noggle*, 4 Ohio St. 46, it was said that the character of the instrument would not be changed by the mortgagee assuming liability as a surety for the insolvent debtor. The facts of that case are so unlike the one under consideration, however, that it is not profitable to make extended comment on it. The general rule unquestionably is as above stated, and there is no language in the instrument under consideration limiting the liability of the vendees.

An assignee holding for the benefit of creditors rests under the legal obligation to account to the assignor for any surplus after the payment of the debts. There is no agreement to do so expressed in this writing. It may be that there is seldom a surplus to be returned, and that statutory assignments are often executed without any provision of this sort. The inference, however, seems inevitable that, if the vendees were bound to pay a fixed price without reference to what they might be able to derive from a sale of the goods, they intended to retain the surplus, if there should be any. It is hardly consistent with ordinary business dealings for a purchaser to assume all risks of loss without some chance of gain.

The imposition of a lien on the property in favor of the creditors, and the agreement of the vendees to sell and apply the proceeds, show some little appearance of an intent to create a trust. Yet a lien in favor of the creditors is not inconsistent with the other parts of the contract as above construed. The creditors

could enforce it only in accordance with the provisions of the contract. Nor would the fact that Carson might have the right to compel the application of the proceeds of the sales of the merchandise to the payment of these debts, necessarily change the character of the contract into an assignment. When his debts were paid by the purchasers the transaction would be at an end, so far as he is concerned, and the lien of the creditors would be extinguished. No reason is apparent why this contract may not be given effect according to its very letter.

All that has been said with reference to the effect of this instrument must be understood as applying only to the case actually presented. If such an instrument were attacked for fraud, of course, purchasers from an insolvent debtor would be required to act fairly and in good faith. But, in this case, the plaintiffs merely seek to have the instrument declared to be an assignment, and executed as such. We agree with the trial court in holding that the instrument under consideration is not an assignment for the benefit of creditors, and that the petition stated no cause of action.

The judgment is affirmed.